## ARNOLD *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 825.   Argued January 13, 16, 1893. — Decided February 6, 1893.

Knit woollen undershirts, drawers and hosiery are subject to duty as "wool wearing apparel," under paragraph 396 of section 1 of the act of October 1, 1890, 26 Stat. 567, 597, c. 1244, and not as "knit fabrics made on frames," under paragraph 392 of the same act.

THE appellants imported into the port of New York, by the steamship Alaska, several cases containing knit woollen undershirts, drawers and hosiery. The collector assessed duty on them, under paragraph 396 of § 1 of the tariff act of October 1, 1890, 26 Stat. 567, 597, c. 1244, as "wool wearing apparel." The appellants protested, claiming that the articles were dutiable only under paragraph 392 of the same act, as "knit fabrics made on frames." On this protest, the board of general appraisers, reversing the decision of the collector, held that the merchandise should have been classified as contended by the importers, under paragraph 392, and not under paragraph 396. Thereupon the collector made application to the United States Circuit Court for the Southern District of New York,

for a review of the matter.   Additional testimony was taken
as authorized by the statute, and, on hearing, that court
reversed the decision of the board of general appraisers and
sustained the ruling of the collector.   46 Fed. Rep. 510.
From this decision appellants appealed to this court.   Para-
graphs 396 and 392 are as follows:

"396. On clothing, ready made, and articles of wearing
apparel of every description, made up or manufactured wholly
or in part not specially provided for in this act, felts not woven,
and not specially provided for in this act, and plushes and
other pile fabrics, all the foregoing, composed wholly or in
part of wool, worsted, the hair of the camel, goat, alpaca or
other animals the duty per pound shall be four and one-half
times the duty imposed by this act on a pound of unwashed
wool of the first-class, and in addition thereto sixty per centum
ad valorem."

"392. On woollen or worsted cloths, shawls, knit fabrics
and all fabrics made on knitting machines or frames, and all
manufactures of every description made wholly or in part of
wool, worsted, the hair of the camel, goat, alpaca or other
animals, not specially provided for in this act, valued at not
more than thirty cents per pound, the duty per pound shall be
three times the duty imposed by this act on a pound of un-
washed wool of the first-class, and in addition thereto forty
per centum ad valorem; valued at more than thirty, and not
more than forty cents per pound, the duty per pound shall be
three and one-half times the duty imposed by this act on a
pound of unwashed wool of the first-class, and in addition
thereto forty per centum ad valorem; valued at above forty
cents per pound, the duty per pound shall be four times the
duty imposed by this act on a pound of unwashed wool of
the first-class, and in addition thereto fifty per centum ad
valorem."

*Mr. Stephen G. Clarke* and *Mr. William B. Coughtry* for
appellants.

*Mr. Assistant Attorney General Maury* for appellees.

MR. JUSTICE BREWER, after stating the ease, delivered the opinion of the court.

The question in this case is whether knit woollen shirts, drawers and hosiery come within the enumeration of "clothing, ready made, and articles of wearing apparel of every description, made up or manufactured wholly or in part . . . of wool," as provided in paragraph 396; or of "knit fabrics, and all fabrics made on knitting machines or frames, and all manufactures of every description made wholly or in part of wool," as found in paragraph 392. In the original brief filed by counsel for appellants, it is conceded that either enumeration, in the absence of the other, might cover these goods; though, in the reply-brief, it is contended that in no proper sense of the term are the appellants' importations wearing apparel; and in support thereof definitions are quoted from several dictionaries, in which the word "apparel" is defined as "external clothing," "external habiliments or array," and "a person's outer clothing." As against this, counsel for the government also refers us to dictionaries, in which the term "wearing apparel" is defined as "garments worn, or made for wearing; dress in general;" and the noun "wearing," as "that which one wears; clothes; garments." But it is unnecessary to search or compare the dictionaries. The term "wearing apparel" is not an uncommon one in statutes, and is used in an inclusive sense as embracing all articles which are ordinarily worn — dress in general. Indeed, in this very statute, paragraph 752, in respect to articles exempt from duty, names "wearing apparel and other personal effects (not merchandise) of persons arriving in the United States." Obviously, the term is here used as covering all articles of dress; while "personal effects" refer to other matters of personal baggage not used as clothing. And it cannot be believed that a person coming into the United States is permitted to bring in his outer clothing free from duty, while his underclothing is subject to duty and seizure for the non-payment thereof. So in exemption statutes is frequently found the term "wearing apparel." Thus, for

instance, in the General Statutes of Kansas, page 474, c. 38, sec. 4, is this description of exempt property: "First, the wearing apparel of the debtor." And in the late bankruptcy act "the wearing apparel of the bankrupt" is excepted from the operation of the assignment. Rev. Stat. sec. 5045. No one would suppose that under such statutes a man's pantaloons and shoes were exempt, while his drawers and socks were not. Not only is that the general sense in which the term is used in statutes, but also the very form of the language here used indicates an intent to compass within the enumeration every article which is ordinarily worn or recognized as an article of dress. The language is, "clothing, ready made, and articles of wearing apparel of every description." The words "clothing, ready made," would include coats, pants, vests and overcoats, at least; and the sweeping term added thereafter, "articles of wearing apparel of every description," was obviously meant to reach out and include everything that one wears. We think that the concession made by appellants' counsel in their principal brief is beyond question.

Each paragraph, as will be noticed, contains the words "not specially provided for in this act;" and the contention of appellants is, that the enumeration in paragraph 392 is more specific, and that therefore it should control, referring, in this connection, to *Solomon* v. *Arthur*, 102 U. S. 208, 212, and *Hartranft* v. *Meyer*, 135 U. S. 237. But we think that the reverse is true, and that the description in 396 is more of a special enumeration than that in 392. Clothing and articles of wearing apparel are more specific than cloths and knit fabrics. Out of cloths and knit fabrics clothing and wearing apparel are made. The latter are included within the former, while the former are not included within the latter. So, if the decisive matter was the more special enumeration, we think 396 would be preferred. And in this connection may be noticed the relative rate of duty, which is higher for the articles in 396 than for those in 392. The idea which runs through this statute is well known to be that of protection to our manufactures. As the duty prescribed by 396 exceeds that prescribed by 392, it suggests that the articles named in

396 have been subjected to an additional process, which is to be protected by an increase of duty. And so it is, that paragraph 392 is apparently intended to provide the duty for what may be considered "piece-goods," manufactured material; while that part of paragraph 396 which we have been considering, and which stands, as it were, correlated to paragraph 392, does not refer to manufactured material, but that material carried by an additional process of manufacturing into the condition of manufactured articles. It is true that we find shawls named with cloths and fabrics in paragraph 392, and they are manufactured articles; yet they closely resemble manufactured material, and are little more than piece-goods cut into sizes suitable for use. It is also true that paragraph 396 names felts, plushes, etc., in addition to clothing and wearing apparel, and they are manufactured material rather than manufactured articles; but the articles embraced within the terms clothing and wearing apparel are put in a class by themselves, and separated from the other articles named in the paragraph by the expression "not specially provided for in this act," and it may well be that Congress thought that the manufacture of felts, plushes, etc., required so much more labor than that of cloth and knit fabrics, as to justify subjecting them to the higher duty of manufactured articles, like clothing and wearing apparel.

But more significant is the change made in the provisions of the tariff of 1890 from those in that of March 3, 1883, 22 Stat. 488, c. 121. A paragraph of that tariff act (22 Stat. 509;) is as follows:

"Clothing, ready made, and wearing apparel of every description, not specifically enumerated or provided for in this act, and balmoral skirts, and skirting, and goods of similar description, or used for like purposes, composed wholly or in part of wool, worsted, the hair of the alpaca, goat or other animals, made up or manufactured wholly or in part by the tailor, seamstress or manufacturer, except knit goods, forty cents per pound, and in addition thereto, thirty-five per centum ad valorem."

Knit goods, it will be perceived, are excepted from the

description of "clothing, ready made, and wearing apparel of every description." In *Brown* v. *Maryland*, 12 Wheat. 419, 438, Chief Justice Marshall recognized as "a rule of interpretation, to which all assent, that the exception of a particular thing from general words proves that, in the opinion of the law-giver, the thing excepted would be within the general clause had the exception not been made." Applying that rule it follows that but for the exception the general description of "clothing, ready made, and wearing apparel" would include knit goods; and when by the legislation of 1890 this exception was stricken out, it is very persuasive that Congress understood and intended that no articles of wearing apparel should be excepted from the enumeration of paragraph 396, because they were knit goods or fabrics.

And again, there is some significance in the substitution of the term "knit fabrics" in the act of 1890, for "knit goods," in that of 1883. For while they are frequently interchangeable, it would seem as though "knit goods" more appropriately described manufactured articles; while "knit fabrics" referred more especially to manufactured material, piece goods. Thus in the subsequent description, in paragraph 396, are these words, "plushes and other pile fabrics." Obviously they refer to manufactured material rather than manufactured articles. And in this connection it is well to notice that, according to the testimony, there are goods known to the trade which are piece goods, and which are fabrics made on knitting machines or frames. One witness, John D. Ashwell, manager of the Norfolk and New Brunswick Hosiery Company, a company dealing in undershirts, drawers and hosiery, and who had been connected with that company for eighteen years, testified that he had never heard such articles called "knit fabrics," saying: "I never had a man ask me for knit fabrics in our line of business that I know of. Had he written to me for knit fabrics, I should have told him that we did not have them, that we did not sell them, and sent him to parties who did make them." The change of the term, therefore, strengthens the conclusion deduced from other considerations.

Our conclusion, therefore, is that there was no error in the decision of the Circuit Court, and it is                    *Affirmed.*