UNITED STATES v. ESCHWEGE et al.

ESCHWEGE et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

Nos. 39, 40.

1. CUSTOMS DUTIES—CONSTRUCTION OF TARIFF ACTS—CLASSIFICATION.

In construing tariff acts based on the fundamental idea of protection to domestic manufacturers, and in which the duties are uniformly increased to correspond with the advanced state of manufacture of the article, where a material used in making manufactured articles has been subjected to further treatment than that of a class specifically enumerated, it should be classified with a higher, rather than a lower, class.

2. SAME—CLASSIFICATION—CELLULOID IN POLISHED SHEETS.

Sheets of celluloid, polished on both sides, are dutiable under the third clause of paragraph 17 of the tariff act of 1897, as "finished or partly finished articles," and not under the second clause, which covers celluloid "rolled or in sheets, unpolished."

Appeal from the Circuit Court of the United States for the Southern District of New York.

J. E. Hindon Hyde, for the United States.

Edward Hartley, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The question in this case is as to the classification, under the tariff act of 1897, of sheets of celluloid polished on both sides. Celluloid is one of the compounds of pyroxyline, and in the processes of manufacture is advanced from the crude article into progressive forms: (1) Into rolled slabs, the material being in a rough and porous condition; (2) into unpolished sheets, by planing the rough slabs; (3) into polished sheets, by subjecting the unpolished sheets to hydraulic pressure between polishing surfaces; and (4) into finished and partly finished articles by cutting up the polished or unpolished sheets, and further manipulation. Both the unpolished and polished sheets are an article of commerce, are imported in sheets of different thicknesses, and are sold to be cut up, and the pieces made into numberless small articles. The rolled slabs are not imported or dealt in commercially, but rolled celluloid in the form of rods is.

Paragraph 17 of the tariff act of 1897, subjecting celluloid to duty, is as follows:

"(17) Collodion and all compounds of pyroxyline whether known as celluloid or by any other name, fifty cents per pound; rolled or in sheets, unpolished, and not made up into articles, sixty cents per pound; if in finished or partly finished

articles. and articles of which collodion or any compound of pyroxyline is the component material of chief value, sixty-five cents per pound, and twenty-five per cent. ad valorem."

It was insisted by the importers that the sheets in controversy should have been classified for duty as a compound of pyroxyline, and were dutiable, under the first clause of the paragraph, at 50 cents per pound; or (2) as a compound of pyroxyline "rolled or in sheets, unpolished, and not made up into articles," under the second clause of the paragraph, and dutiable at 60 cents per pound; or (3) as a non-enumerated manufactured article, under section 6 of the tariff act, and subject to duty at 20 per cent. ad valorem.

The board of general appraisers were of the opinion that the proper classification of the importations was under the third clause of paragraph 17, and that they were "finished or partly finished articles," and dutiable at 65 cents per pound and 25 per cent. ad valorem. The circuit court, upon the appeal from the decision of the board, was of the opinion that the proper classification of the importations was under the second clause of paragraph 17. and for that reason reversed the decision of the board.

The phraseology of paragraph 17 is not happily chosen, but, reading it by the aid of pre-existing legislation upon the same subject, and applying settled rules of interpretation, we think the meaning of congress to be reasonably plain. The tariff acts of 1883, 1890, and 1894, in imposing duty upon compounds of pyroxyline, are identical in terms of enumeration, and differ only in rates of duty.

Paragraph 15 of the act of 1894 reads as follows:

"(15) Collodion and all compounds of pyroxyline, by whatever name known, forty cents per pound; rolled or in sheets, but not made up into articles, fifty cents per pound; if in finished or partly finished articles, forty-five per cent. ad valorem."

These acts, as well as the present act, evince a consistent purpose by congress to classify celluloid for duty with reference to the several stages of advancement which the material undergoes in the process of manufacture, subjecting the crude article to the lower rate, and progressively increasing the rate as the material is advanced by additional labor. It will be observed that the second clause of the paragraph in these acts does not, apparently, embrace in its enumeration all kinds of celluloid "rolled or in sheets," but only those "not made up into articles." The exception was unnecessary, because of the language of the third clause, unless congress regarded some kinds of sheet and rolled celluloid as made up into articles. Whether, under the earlier acts, importations like the present would have been dutiable under the second clause of the paragraph, we need not consider. Polished and unpolished sheets were dutiable at the same rate as rolled (or rod) celluloid, unless the polished sheets, being an article further advanced, were excluded from that clause, and relegated to the third clause. However this may be, and whether congress intended to discriminate between the different kinds of celluloid in sheet or not, some effect must be given to the change in the paragraph introduced by the act of 1897. That change demonstrates beyond controversy the intention of congress to discriminate between pol-

ished and unpolished sheets, and, while imposing the same duty upon unpolished sheets as upon rolled celluloid, to exclude polished from the same dutiable category.

Did congress intend to prescribe a lower rate of duty on polished sheets than on rolled celluloid and unpolished sheets of celluloid? If it did not, is the language of the succeeding clause of the paragraph apt, and sufficient to describe the polished sheets?

As was said in Arnold v. U. S., 147 U. S. 497, 13 Sup. Ct. 408, 37 L. Ed. 253, of the tariff act of 1890, the idea which runs through this tariff act "is well known to be that of protection to our manufactures." Such protection is not usually given in tariff acts by subjecting to the higher duty those articles of a given class of products or manufactures which represent the least outlay of skill and labor, or to the lower duty those which represent the greater. The present act throughout, as well as in paragraph 17, endeavors to give it by laying a higher duty on the more advanced articles of the general class. It does not necessarily follow that congress did not intend to make an exception in the case of celluloid sheets, but such an intention ought not to be inferred in the absence of language signifying it. There is no such language in the celluloid paragraph, and that paragraph was obviously framed to cover every product, crude and manufactured, of which any compound of pyroxyline is the component material of chief value.

Celluloid sheets are an "article." Junge v. Hedden, 146 U. S. 233, 13 Sup. Ct. 88, 36 L. Ed. 953. If they are such within the meaning of paragraph 17, they are included in the enumeration of the last clause. The term of that clause, "finished or partly finished articles," is a comprehensive term, and was doubtless employed to embrace a large class of articles, many of which are further advanced than the polished sheets of celluloid; but it is also appropriate to describe the polished sheets, and to embrace all the members of the general class. The clause does not enumerate any specific articles, and the general term is not, therefore, to be narrowed to embrace only those ejusdem generis. The polished sheets must find a place somewhere in the enumeration of that paragraph, and that clause, it seems to us, supplies the only place where they can be properly located for duty purposes.

The decision of the circuit court is therefore reversed, and that of the board of general appraisers is affirmed.