# CASES DECIDED

BY THE

# SUPREME COURT

OF THE

## TERRITORY OF HAWAII

---

### TERRITORY *v.* HAMAKUA MILL COMPANY.

### No. 877.

RESERVED QUESTION FROM CIRCUIT COURT, FOURTH CIRCUIT.

HON. C. F. PARSONS, JUDGE.

SUBMITTED OCTOBER 5, 1915.              DECIDED OCTOBER 12, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

STATUTES—*Sec. 2032 R. L. 1915—construction—ejusdem generis.*
    The rule of *ejusdem generis* is applicable in the construction of
    Section 2032, R. L. 1915, and held, that the words "other food
    products" are limited to food products of like kind with those
    expressly mentioned in the statute, and do not include manufac-
    tured raw sugar.

OPINION OF THE COURT BY ROBERTSON, C.J.
(Quarles, J., dissenting.)

An information was filed against the defendant corpora-
tion charging that it "on the first day of June, A.D. 1915,
and for a period of ten months prior thereto, did manufac-
ture and prepare a certain food product, to-wit, sugar, in

and upon certain premises there situate, which said sugar·
was then and there intended for sale and for human con-
sumption, without first obtaining a license so to do from
the treasurer of the County of Hawaii."

The material facts, which are agreed upon, are as follows:
That the defendant corporation is, and for many years has
been, engaged in the growing of sugar cane and the manu-
facture and sale of raw sugar; that such sugar is not a com-
pound, but .consists solely of sugar extracted from sugar
cane and such impurities as may still be therein by reason
of its not having been refined; that such sugar is manufac-
tured primarily for shipment and sale to refineries on the
mainland of the United States; that of an annual output
of from 7,000 to 10,000 tons of raw sugar from defendant's
mill all is exported except about 25 tons which are sold to
local people; and that such raw sugar is a food product.
The defendant admits that it has not obtained a license
under Section 2032 of the Revised Laws, and denies that
the raw sugar so as aforesaid manufactured by it is a food
product within the meaning of the statute.

Section 2032 of the Revised Laws provides that "No
person shall manufacture, compound or otherwise prepare
any confections, cakes, bread stuffs or other food products
intended for sale and for human consumption in any shop
or premises without first obtaining from the treasurer of
the county or city and county where such shop, building or
other premises are located, a license." Then follow pro-
visions to the effect that no such license shall be granted
except upon a certificate from the Board of Health that
the premises are in a sanitary and fit condition for the
manufacture, compounding or otherwise preparing such
food products. Sections 2033 and 2034 prescribe the an-
nual fee for the license and provide the penalty for the
violation of the law. And section 2035 excludes from the
operation of the statute the manufacture and sale of poi

and paiai. The circuit court reserved to this court the question whether the defendant is "liable for the payment of the license fee prescribed by the provisions of sections 2032 to 2035 of the Revised Laws, 1915." The question discussed in the briefs and which, evidently, was intended to be reserved, is whether the defendant upon the facts stated, is liable to the penalty for not having obtained a license under the statute.

The county attorney contends that raw sugar is included in the words "other food products" as used in the statute; and that the fact that poi and paiai are expressly excluded from the operation of the statute manifests an intent on the part of the legislature that nothing else should be excepted which falls within the language of the law. Counsel for the defendant contends that the rule *ejusdem generis* applies and that, as raw sugar is not a food product of a kind like any of those expressly enumerated, it does not fall within the purview of the statute. The endeavor is, of course, to ascertain the legislative intent. The query naturally asserts itself, if the legislature intended to include all manufactured, compounded or prepared food products, why were confections, cakes and bread stuffs specially mentioned? The form of expression used in the statute is a time honored one, and has given rise to the rule of construction invoked on behalf of the defendant. The rule of *ejusdem generis* as applied to statutes—that where particular words of a statute are followed by general, the general words are restricted in meaning to objects of like kind with those specified—is founded in reason, and, though a mere rule of construction, is, where proper of application, a potent rule. In the case of *United States* v. *Stever,* 222 U. S. 167, 174, the supreme court said, "unless there is a clear manifestation to the contrary, general words, not specific or limited, should be construed as applicable to cases or matters of like kind with those described

by the particular words." And in *City of Chicago* v. *Ross,* 257 Ill. 76, 79, the court said, "this rule is enforced in the construction of a statute unless there is something in the statute or its context which shows that the doctrine of *ejusdem generis* should not be applied." The rule being so long and so thoroughly established the legislature may well be supposed to have phrased the statute with reference to it. There is nothing upon the face of the statute to indicate that the rule ought not to be applied, or that its application would pervert or obstruct the intention of the law makers. On the other hand, there is a good deal to indicate that the legislature expected that the rule would be applied, and that leads to the conclusion that raw sugar was not intended to be included as a food product within the meaning of the act. The title of the original act, which was Act 117 of the Session Laws of 1911, was "An act to provide for the issuance of licenses for the manufacture, compounding and preparation of *certain* food products;" the things enumerated are infinitesimal in value and extent as compared with the raw sugar manufactured in this Territory; the statute is primarily a measure of sanitation aimed at compounds made by hand or such as are handled after they are made and before or during consumption; the commodities enumerated in the statute are such as are intended to be consumed within the .Territory, whereas raw sugar is manufactured principally for export, only a very small proportion—in the case at bar, a fraction of one per cent—being sold for local consumption. And the phraseology "any shop or premises" would hardly have been used if the legislation was intended to refer to such large and important structures as sugar mills. The words "other food products" are doubtless operative to include things similar in kind to "confections," "cakes" and "bread stuffs," such, for example, as pies, candy, and, probably, ice cream. But raw sugar is not of the like kind with any of the things mentioned in the statute.

We see no force in the contention that the provision of section 2035 that "Nothing in sections 2032-2034 shall be construed to include the manufacture and sale of poi or paiai," points to an intention to include all other food products. "The exception of certain things does not always show that all others are included." 2 Lewis' Sutherland Stat. Con., Sec. 494. This provision, strictly speaking, is neither a proviso nor an exception, but is a declaration of the legislative intent that poi shops were not to be considered as included though poi and paiai might be regarded by the courts (as they seem to have been by the legislature) as food products of a kind like "bread stuffs" and, therefore, within the operation of the act. We perceive no ground for holding that it was intended to enlarge the scope of section 2032.

We are of the opinion that the rule of *ejusdem generis* aids in ascertaining the intention of the legislature with respect to the statute in question, and that its application leads to the conclusion that the manufacture of raw sugar is not within its purview.

The question is answered in the negative.

*W. H. Heen,* Deputy County Attorney of Hawaii, for plaintiff.

*H. Irwin* for defendant.

### DISSENTING OPINION OF QUARLES, J.

In my opinion the only question in this case is a correct interpretation or construction of section 2032, R.L., which is quoted at length in the majority opinion. In the original enactment of this statute, as well as in the revision (Sec. 2035, R.L.), there is an exception excluding from the operation of the act the manufacture and sale of poi or paiai. As all statutes must be construed for the purpose

of ascertaining the intent of the legislature in enacting them, we must look to general rules of construction and must endeavor, in the case at bar, to ascertain the intent of the legislature. It is contended, on the one hand, that the rule *ejusdem generis* excludes from the operation of the statute in question all food stuffs not of a kind like "confections, cakes, bread stuffs," and that as raw sugar is not "confections," "cakes" or "bread stuffs," it does not come within the term "other food products" within the meaning of the statute. The rule *ejusdem generis* is generally regarded as an intrinsic aid to the construction of a statute and to apply, unless there is something in the statute which shows that it was not intended to apply, to the particular statute. It is evident to any reasonable mind that poi is not a confection or cake. Whether or not it is a "bread stuff," as used in the statute under consideration, it is not necessary to decide, but inasmuch as it is used with meats and other foods, in the same manner that bread is, there may be some question as to whether or not it is "bread stuff" within the contemplation of the statute. At any rate all will admit that it is a "food product." If the legislature intended to confine the operation of the statute to the manufacture and preparation of confections, cakes and bread they would hardly have used the words "other food products." It is evident that the legislature was of the opinion that poi would come within the terms of the statute, in that it is a food product, and desired to exempt it from the operation of the statute without exempting other food products from the operation of the statute. That the extraction of sugar from the juice of cane is the manufacture of a food product no one will dispute. In arriving at the intent of the legislature we are to consider the entire act—all of its provisions, including exceptions and provisos—then determine as to the enacting clause or main part of the statute itself, and also, as to

the exception or proviso, just what the legislature intended in each instance.

On behalf of the defendant appellee certain authorities are relied upon, which, in my opinion, do not sustain its contention. For instance, in the case of *Commonwealth* v. *Dejardin,* 126 Mass. 46, the defendant was charged "with printing and publishing * * * pictures, figures and descriptions of naked girls." The proof showed that he took photographs of two young girls stripped only to the waist. The court held that the proof did not establish the charge made in the indictment and that the maxim *noscitur a sociis* applied to that case. In other words, the court there held that a word is best understood by the meaning of associated words. In *Joplin* v. *Leckie,* 78 Mo. App. 8, the charter of the city authorized it to levy an occupation tax upon manufacturing corporations, and the court held that this did not authorize the levy of the tax upon private parties engaged in manufacturing. In *Rohlf* v. *Kasemeier* (Ia.), 23 L. R. A. N. S. 1284, the case is summed up in the syllabus as follows: "Personal services of a physician are not a commodity within the meaning of a statute relating to pools and trusts, and making guilty of a conspiracy persons who combine to regulate or fix the price of any article of merchandise or commodity or to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in the state." The court simply held that professional services were not an article of merchandise or a commodity, —a very wise conclusion.

"An express exception, exemption or saving excludes others. Where a general rule has been established by statute with exceptions, the court will not curtail the former nor add to the latter by implication. Exceptions strengthen the force of a general law and enumeration weakens it as to things not expressed." 2 Lewis' Sutherland, Stat. Con.,

Sec. 494. "The legislature has prescribed a general rule, with special disabilities or privileges, and these cannot be enlarged or extended to objects not embraced in the exception by mere implication or from parity of reason." *Tyson v. Britton,* 6 Tex. 224. "Where the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms." *United States* v. *Dickson,* 15 Pet. 165. When a general rule has been established by statute, with exceptions, the courts will not curtail the rule nor add to the exceptions by implication. *Roberts* v. *Yarboro,* 41 Tex. 452; *Wallace* v. *Stevens,* 74 Tex. 559. An exception to a general provision is to be strictly construed, and as taking no case out of the enacting clause which does not fairly fall within the terms of the exception. *United States* v. *Ewing,* 140 U. S. 142, 148; *Schlemmer* v. *Buffalo, etc., R. Co.,* 205 U. S. 1. The provisions contained in an exception or proviso are to be construed by the same rules as the provisions of the enacting clause. *United States* v. *Whitridge,* 197 U.S. 135. A proviso or exception is properly referred to to aid the construction of the enacting clause, and this may be done although the proviso has been repealed. *Alexander* v. *Alexandria,* 5 Cranch 1, 8; *Brewer* v. *Blougher,* 14 Pet. 178; *Thaw v. Ritchie,* 136 U. S. 519, 542; *Arnold* v. *United States,* 147 U. S. 494, 499; *Austin* v. *United States,* 155 U. S. 417, 431. The exception of a particular thing from general words marks their extent and proves that, in the opinion of the legislature, the thing excepted would be within the general clause had the exception not been made. *Arnold* v. *United States,* 147 U. S. 494, 499; *Brown* v. *Maryland,* 12 Wheat. 419, 438; *Pott* v. *Arthur,* 104 U. S. 735. In *Gibbons* v. *Ogden,* 9 Wheat 1, the court, at page 191, said: "It is a rule of construction, acknowledged by all, that the exceptions from a power mark its

extent, for it would be absurd, as well as useless, to except from a granted power that which was not granted—that which the words of the grant could not comprehend. If, then, there are in the constitution plain exceptions from the power over navigation, plain inhibitions to the exercise of that power in a particular way, it is a proof that those who made these exceptions, and prescribed these inhibitions, understood the power to which they applied as being granted."

If the legislature understood that the manufacture and preparation of poi for sale was the manufacture and preparation of a food product, it is very clear that they also understood the manufacture of raw sugar to be the manufacture of a food product. Having expressly excepted poi from the operation of the statute and remained silent as to the manufacture of sugar, we should not conclude that they intended to exclude sugar also. This would be interpolating into the statute an exception not provided for by the legislature itself, and, to my mind, contrary to the manifest intent of the legislature.

The rule of intrinsic aids to statutory construction, invoked in this case, *ejusdem generis,* and the exclusion of things not named, are mere aids to construction, and must be considered, in the light of rules of construction affecting them, as shown by the authorities cited herein, which, of course, are only a few bearing upon the principle involved, and which, in my opinion, establish that raw sugar is a food product within the meaning of the statute under consideration, and the manufacture of the same subject to a license fee of $10. In my opinion it is not proper to construe the statute by the extrinsic fact that the great bulk of the sugar manufactured is shipped out of the Territory, and that only a small per cent—25 tons—is sold and consumed in the vicinity of the defendant's sugar mill. When we come to think of it, 25 tons of sugar consumed in one

vicinity, comprises a considerable quantity of food products, and if the same ratio existed throughout the Territory it would show a very large consumption of raw sugar by the inhabitants of the Territory, to guard whose health it is more than probable that the statutes under consideration were enacted. The purpose and object of the statute under consideration is to benefit the health of the citizen by providing for an inspection of premises where food products are manufactured, prepared or sold. Hence it is not to be considered as a revenue measure. The same session of the legislature that enacted this statute enacted another one (Act 101, S. L. 1911) providing for the inspection and regulation of places where poi or paiai is manufactured, prepared or sold, but without requiring a license fee of those engaged in the business of manufacturing, preparing or selling poi or paiai. To my mind it is not reasonable to suppose that the legislature intended that the places where other food products, including poi or paiai, are manufactured, prepared or sold should be under regulations insuring good sanitation, without providing for the inspection of sugar mills to the end that sugar mills should also be kept in a good sanitary condition. The exception of poi or paiai from the operation of the statute in question, and which virtually exempts it from the license fee of $10, I think clearly shows that the legislature did not intend to confine the operation of the statute to places where confections are manufactured, compounded, or prepared, and to bakeries. I do not think that the legislature intended that the statute should apply only to candy shops and bakeries.