### In re ADAMSON.
### Patent Appeal No. 3858.

Court of Customs and Patent Appeals.
Nov. 22, 1937.

Walter L. Pipes, of New York City (Gourley & Budlong and Charles C. Willson, of Boston, Mass., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner rejecting all of the claims of appellant's application. Ten claims are involved, numbered 13 to 22, inclusive; claim 13 is illustrative of all the claims in issue and reads as follows: "13. A tailored business suit formed primarily of a one-way stretch woven fabric having the softness, flexibility and appearance characteristic of suiting material and made of inelastic warps and wefts having interposed at intervals between the inelastic wefts one or more elastic wefts of a diameter not appreciably larger than the inelastic wefts, said elastic wefts being constructed and arranged to impart to the fabric a small degree of stretch in the body encircling direction of the fabric."

The references cited are: Field, 1,919,292, July 25, 1933; Heltewig (Australian), 16,067, July 3, 1929.

Appellant's application relates to an outer garment such as a suit of clothes, constructed from a woven fabric consisting of inelastic warp threads, and both inelastic and elastic weft threads. The fabric is placed in the suit in such position that the elastic wefts impart a small degree of stretch in the body encircling direction of the fabric.

The patent to Field relates to undergarments, such as corsets, girdles, etc., comprising a knitted or woven fabric made of two-way stretch material, by the use of elastic yarn made of rubber filaments incorporated in both the warp and weft of the fabric. Both warp and weft are composed principally of elastic threads, but the patent states:

"* * * Relatively non-elastic threads may cooperate with at least one of said groups of threads to limit the stretch of the material in one of said directions, or possibly in both. Two examples of such material are shown in Figs. 6 and 7, and will be described below in more detail. * * *

"When material of the character shown in Fig. 6 is employed for the main panels of the garment, it is preferable to have the non-elastic strands, which limit the stretching of the material in the direction of their length, extend up and down in the panels, to control their stretching in this direction. However, these strands may run crosswise, or even diagonally. Thus, for example, there are shown in Figure 2 non-elastic strands 25' running crosswise of the wearer, said non-elastic strands limiting the stretch around the body of the wearer."

The preamble of the patent contains the following: "* * * it has been proposed to make garments, adapted to be worn about the hips, of sheet rubber, but these are unsatisfactory for ordinary use on account of obvious reasons, principally lack of porousness. On the other hand, suggestions have been made to the effect that pieces of material which are elastic in one direction could be sewed or otherwise secured together so that parts of the garment are able to stretch in one direction and parts in other directions. However, for one reason or another, none of the proposals in the art has proven satisfactory." (Italics ours.)

The patent to Heltewig discloses a woven fabric in which elastic threads are incorporated in the weft only. The patent states some of the uses for which the fabric is suitable, such as varix bandages, knee protectors for sport, mittens, etc. The claim of the patent, however, is very broad and reads as follows: "1. A rubber-elastic woven or knitted fabric in which rubber-threads at stretched state are shot as weft alternately with yarn-wefts into the warp or row of loops adjusted wider in accordance with the rubber-stretching."

The Examiner in his statement recited several grounds of rejection as follows:

"The invention in this case does not appear to reside in garments. No garment structure is recited in the claims. The structure recited is for the most part that of the fabric. Such expressions as 'outer garment' and 'tailored business suit' are too indefinite to convey any particular structure, and each of the claims was rejected as being indefinite. * * *

"It is not apparent that applicant has, by selecting a material of the character disclosed for an outer garment or business suit, done anything of a radical nature to warrant invention, and each of the claims accordingly was further rejected as calling for lack of invention, for this reason.

"Each of the claims was further rejected on the art above explained. While Field discloses the use of an inherently stretchable elastic fabric in an undergarment, it would not involve invention to employ such a fabric in an outer garment. Field faced applicant's problem of constructing a fabric that would conform to the body of the wearer upon assuming different postures and he solved it as did applicant, by employing fabric embodying elastic threads. Therefore, in view of this teaching of Field it would not involve invention to employ such a fabric in an outer garment, whether it be a suit, a vest, a pair of trousers, or a dress.

"While the claims do not specifically disclose that the elastic threads lie *only* in the weft of the fabric, nevertheless, the patent to Heltewig discloses this feature and the claims accordingly were further rejected on Field in view of Heltewig."

The Board of Appeals in its decision stated:

"All of the appealed claims are directed to a garment such as a business or tailored suit made from woven fabric having practically no stretch in the vertical direction but having a considerable stretch circumferentially. No special type or style of suit is claimed. The novelty, if any, must necessarily reside in the particular kind of cloth used. As described, this cloth is made of the usual woolen thread for the warp and weft, but interposed at suitable intervals in the wefts are elastic threads having a rubber core wrapped with fiber so as to resemble ordinary woolen thread. These elastic threads are put under slight tension so as to hold the other weft threads in a slightly slack condition.

"Each of the patents to Field and Heltewig shows that is is old to make up woven fabric in the manner set forth in these claims, but it is clear from the description, that the fabric disclosed in these patents was intended for use mainly in making under-garments, bandages, mittens, socks, etc. It is also well known that in making up suits from ordinary woven fabric, it is the rule that the length of the garment shall run in the direction of the warp. This is done for the reason that such cloth is practically inextensible in the direction of the warp, and is extensible to a limited degree in the direction of the welts. Appellant has accentuated the latter characteristic by the addition of his rubber threads. It is probable that the real reason of not using rubber threads of this type heretofore in making men's clothing was due to the fact that suitable rubber thread was not available. It appears to us that in view of the prior art that applicant's addition was more or less obvious, and, therefore, not entitled to patent protection."

It will be observed that the Board did not specifically affirm the first two grounds of rejection by the Examiner, but relied principally upon the third ground of rejection, viz., lack of patentability over the cited references.

It is our opinion that this was a valid ground of rejection. However, in so holding we do not pass upon the question of whether or not the material described in the claims, out of which the outer garments are made, is itself patentable. The only claims before us are for a manufacture, viz., an outer garment such as a suit of clothes, made out of specified material. If invention be involved in the claims at all it is in the conception of a suit of clothes made out of a material so formed as to stretch in a body encircling direction. If the prior art discloses fabric having a one-way stretch, and a use of such fabric that would make it obvious to one skilled in the art of making clothes that material possessing this property could be utilized in making an outer garment such as a suit of clothes, then the claims here involved lack patentability, and it is immaterial whether the fabric out of which the clothes are made, as described in the claims, is a patentable improvement over the material disclosed by the prior art.

The patent to Field states that the invention relates to "corsets, girdles, and the like," but the claims are broad and specifically cover all garments worn next to the body. While it is true that the patent discloses a fabric possessing primarily two-way stretch, it also discloses that it had been proposed in the prior art to use, in the making of undergarments, "pieces of

material which are elastic in one direction," and the patent further discloses, as a part of the invention, the insertion of non-elastic threads in the weft of the fabric to limit the stretch of the elastic threads in the weft.

As hereinbefore noted, the patent to Heltewig discloses a fabric having elastic threads only in the weft, and that such material is useful for mittens, among other things.

The articles embraced in the involved claims, those embraced in the Field patent, and some at least of those named in Heltewig, come under the general designation of wearing apparel. Arnold v. United States, 147 U.S. 494, 13 S.Ct. 406, 37 L.Ed. 253.

A bathing suit would clearly be covered by the Field patent, and we think it clear, in view of the Heltewig patent, that it would not involve invention to produce a bathing suit which stretched in one direction only. While it might not be so clearly obvious to employ material disclosed by the cited art in the production of an outer garment, we are not satisfied that the Patent Office tribunals erred in holding that such use would be obvious, and therefore, in accordance with the well-established rule that concurring decisions of the Patent Office tribunals will not be reversed in such cases unless manifestly wrong, the decision of the Board of Appeals should be affirmed.

We think the case at bar is distinguishable from the case of Van Heusen Products, Inc. et al. v. Earl & Wilson, 300 F. 922, decided by the District Court for the Southern District of New York. In that case, while fabric of the general nature there involved was known to the prior art, no prior use of such fabric was shown that would lead any one to believe that it might be employed in the making of collars. Therefore, without approving or disapproving the holding in that case, we do not think that it is relevant here.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.