For the foregoing reason, the judgment of the Customs Court is *reversed*.

WORLEY, C. J., sat but did not participate in decision.

UNITED STATES (AUT CUSTOMS BROKERS, INC., A/C A. PLEIN & CO. INC., PARTY IN INTEREST) *v.* AMERICAN NICKELOID COMPANY (No. 5098)*

United States Court of Customs and Patent Appeals,
December 12, 1962

*Barnes, Richardson & Colburn, Siegel, Mandell & Davidson (Joseph Schwartz* and *Joshua M. Davidson,* of counsel) for appellant.

*D'Ancona, Pflaum, Wyatt & Riskind (Edgar Brenhard* and *Merrill A. Freed,* of counsel) for appellee.

*C.A.D. 810.

[Oral argument November 7, 1962 by Mr. Schwartz and Mr. Bernard]

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Associate Judges

MARTIN, Judge, delivered the opinion of the court:

This is an appeal by Aut Customs Brokers, Inc., a/c A. Plein & Co. Inc., importer, herein called "the party in interest," from a judgment of the United States Customs Court, Second Division, C.D. 2297, sustaining a protest filed by an American manufacturer, American Nickeloid Company, under section 516(b) of the Tariff Act of 1930, as amended (19 U.S.C. 1516(b)). ■ The imported merchandise, nickel plated steel strips, was classified by the collector as steel in strips in chief value of steel, polished and plated, under the provisions of paragraph 316(a) of the Tariff Act of 1930 (19 U.S.C. 1001, par. 316(a)), as modified, with an additional assessment at the trade agreement rate specified in paragraph 315 of said Act (19 U.S.C. 1001, par. 315), as modified. The party in interest, appellant here, urges that this classification is correct.

The American manufacturer, appellee here, protested and the Customs Court agreed that the merchandise should not be so classified but should be classified as an article in chief value of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930, as modified.

Pertinent portions of the Tariff Act of 1930 read as follows:

Par. 316(a):

* * * all wire composed of iron, steel, or other metal, not specially provided for (except gold, silver, platinum, tungsten, or molybdenum) ; all flat wires and all steel in strips not thicker than one-quarter of one inch and not exceeding sixteen inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, 25 per centum ad valorem: *Provided*, That all wire of iron, steel, or other metal coated by dipping, galvanizing, sherardizing, electrolytic, or any other process with zinc, tin, or other metal, shall be subject to a duty of two-tenths of 1 cent per pound in addition to the rate imposed on the wire of which it is made; * * *

Par. 315:

* * * and on all strips, plates, or sheets of iron or steel of whatever shape, other than polished, planished, or glanced sheet iron or sheet steel, which are cold hammered, blued, brightened, tempered, or polished by any process to such perfected surface finish or polish better than the grade of cold rolled, smoothed only, there shall be paid two-tenths of 1 cent per pound in addition to the rates provided on plates, strips, or sheets of iron or steel of common or black finish of corresponding thickness or value.

Pertinent portions of paragraph 316(a) as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, of paragraph 315 as modified by the Annecy protocol to the General Agreement on Tariffs and Trade, T.D.

52373, supplemented by Presidential proclamation T.D. 52462 and of paragraph 397 as modified by the Sixth Protocol of Supplementary Concessions of the General Agreement on Tariffs and Trade, T.D. 54108, read as follows:

| Tariff Act of 1930, paragraph | Description of products | Rates of duty |
|---|---|---|
| 316(a) | All flat wires and all steel in strips not thicker than ¼ inch and not exceeding 16 inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced: | |
| | Not thicker than 0.01 inch_____ | 6% ad val. |
| | Thicker than 0.01 inch but not thicker than 0.05 inch. | 8½% ad val. |
| 315 | All strips, plates, or sheets of iron or steel of whatever shape, other than polished, planished, glanced sheet iron or sheet steel, which are cold hammered, blued, brightened, tempered, or polished by any process to such perfected surface finish or polish better than the grade of [cold rolled, smoothed only. | ⅒¢ per lb. in addition to the rates provided on plates, strips, or sheets of iron or steel of common |
| 397 | Articles or wares not specially provided for, whether partly or wholly manufactured: | or black finish of corresponding thickness or value. |
| * | *      *      *      * | *      * |
| | Composed wholly or in chief value of iron, steel, copper, * * * nickel * * *. | 19% ad val. |

A plant manager for American Nickeloid Company at the trial recognized Exhibit 2, a sample of the merchandise at bar, as a nickel-plated steel, plated by the electrolytic process. He testified that tests were made under his supervision to determine what changes took place when raw steel is plated by the electrolytic process; that, as a result of "X-ray diffraction, electron diffraction, and reflectivity studies of pre-plated metal," it was found that there was "an inter-diffusion of the atoms of one metal into the atoms of the other metal," that is, "the atoms of copper would migrate into the steel, the atoms of steel or iron, properly speaking, would migrate into the copper. The atoms of nickel would migrate into the copper, or if the nickel was plated directly on the steel the atoms of nickel would migrate into the structure of iron, the structure of the base metal. And the reverse would take true."; that whether steel be electrolytically plated with copper or nickel or copper and nickel, there is an "inter-penetration" of the metal; that if raw steel, instead of being treated by an electrolytic process, were painted or lacquered, there would be no such inter-diffusion or inter-penetration.

Another witness for American Nickeloid Company, who qualified in the field of metallurgy, testified primarily to tests made of Exhibit 1, representing chrome-plated steel strip.[1] He also described the electrolytic process by which nickel or nickel and chrome are deposited upon steel. He stated that his answers to questions regarding Exhibit 1 would not be different if asked concerning Exhibit 2, the nickel-plated steel strip.

There was additional testimony on behalf of American Nickeloid Company to the effect that preplated steel, such as Exhibit 2, was used primarily for the manufacture of parts where appearance is a factor and that strip steel and sheet steel were characterized as products of a steel mill while prefinished steel, nickel-plated was not recognized as a steel mill product. In the trial below, American Nickeloid Company's effort to establish the difference in value between plated and unplated steel proved ineffective. It appears to have been conceded however that plated steel costs more than unplated steel.

In holding the imported merchandise to be classified as an article in chief value of metal, not specially provided for, the Customs Court relied, inter alia, on *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T.D. 33365, in which nickel-plated steel strips were held to be classified in paragraph 199 of the tariff act of 1909, 36 Stat. 11, the catchall provision for articles or wares of metal, whether partly or wholly manufactured, instead of paragraph 124 of the tariff act of 1909, which provided:

124. * * * Bands and strips of steel, exceeding twelve feet in length, not specially provided for in this section, thirty-five per centum ad valorem.

and paragraph 128 of the tariff act of 1909, which provided for accumulative duty on all steel sheets or plates when galvanized or coated with zinc or other metal, as claimed by the importer. In that case this court said:

The testimony discloses that the metal in question comes in long coils; that steel constitutes the body of the article; that the steel body is subjected to a galvanizing process, whereby it is first treated with copper and then entirely plated with nickel; that the steel body composes the greater bulk of the finished article, but apparently the nickel has relatively the greater value; that the article is commercially known as strip steel nickel plated. The metal is used in the manufacture of novelties, buttons, buckles, and watchcases.

In answer to the question presented by the record it may be said that although the merchandise was strips of steel in its first estate, it nevertheless became something more than that when it was subsequently plated with nickel. This, of course, was done before importation. It can hardly be doubted that some change in the classification and assessment of the article must follow upon such a substantial change in its component materials, its use, and value. * * *

\* \* \* \* \* \* \*

[1] Exhibit 1 represents the merchandise of Entry No. 774,019, while Exhibit 2 represents the merchandise of Entry No. 765,894. This case concerns only the merchandise of Entry No. 765,894 since it was the first of the two entries to be liquidated.

\* \* \* when the steel strips were plated with nickel \* \* \*, not being specifically enumerated in their advanced condition, they properly fall within the general provisions of paragraph 199 for manufactures of metal not specially provided for. Victor v. United States (128 Fed. 472) ; Eckstein v. United States (140 Fed., 94).

The party in interest relies here primarily on *John A. Steer & Co. v. United States* 57 Treas. Dec. 781, T.D. 44041, in which the Customs Court, Second Division, held galvanized steel strips to be classified as "all steel in strips" under paragraph 316 of the Act of 1922 which is analogous to par. 316(a) in the present Act.

In referring to the *Steer* case, supra, in its opinion in the present case, the Customs Court, Second Division, said:

> In view of earlier cases, \* \* \* it would seem that the court erred in placing the construction it did upon paragraph 316 of the Tariff Act of 1922. Paragraph 135 of the Tariff Act of 1909, like paragraph 316 of the Tariff Act of 1922, provided for steel in strips, without regard to coating or plating, and also provided for iron or steel wire," \* \* \* coated by dipping, galvanizing or similar process with zinc, tin, or other metal, \* \* \*."

In another portion of its opinion, the Customs Court stated:

> Inasmuch as the decisions of this court in *Steer* \* \* \* cannot be reconciled with the decisions of the appellate courts in \* \* \* *Hirsch*, a proper respect for the judgments of the higher courts persuades us to hold that the plated steel strips under consideration here are not the steel strips of paragraphs 316 and 315 of the statute and, being nickel plated, they are something more than steel strips.
>
> In the absence of a more specific provision, the subject merchandise is classifiable in paragraph 397, as claimed by plaintiff. To the extent that this decision is in conflict with *Steer* \* \* \*, those cases are in effect overruled.

The party in interest urges that the Second Division of the Customs Court should follow its decision in the *Steer* case, supra, inter alia in the absence of compelling claims to the contrary. It contends that the decision in the *Hirsch* case, supra, was based at least upon two factors which did not exist in said *Steer* case and do not exist in the present case. First, it is stated that in the *Hirsch* case, it appeared that the nickel was of greater value than the steel, which fact American Nickeloid Company has failed to prove in the case at bar. Second, it is stated that one of the paragraphs (Par. 128 in the act of 1909) under which the importer was claiming the steel strips to be classifiable did not provide for steel in strips but for steel sheets or plates although paragraph 135 did provide for "steel in strips." [2] On the other hand, paragraph 316(a) in the Act of 1930, like paragraph 316 in the Act of 1922, does provide for *all* steel in strips of specified dimensions into which the present merchandise falls.

---

[2] Par. 135 of the act of 1909 was not considered in the *Hirsch* case even though that paragraph is the predecessor of 316(a) of the Act of 1930 according to Digest of Customs and Related Law, U.S. Treasury Dept., see Vol. 1, p. 219.

American Nickeloid Company points out that the evidence is uncontroverted that the "prefinished or pre-plated steel is a separate and different product from its component parts" and that the party in interest, in relying upon "component material of chief value," relies upon a test often mentioned in the cases dealing with statutes *which include it as a test*, but which is non-existent as a test in this case because the statute on which the party in interest is relying covers only "all steel in strips" and not products which are in chief value of steel. Furthermore, it is pointed out that paragraph 397, upon which American Nickeloid Company relies, covers articles composed "wholly" (or in chief value) of metals enumerated therein and therefore the question of chief value is never reached.

We agree with the Customs Court because, aside from the precedents and analysis of the statutes involved which we will consider later, it stands to reason unless there is clear evidence to the contrary that Congress did not intend nickel plated steel strips to be placed in the same classification as unplated steel strips. Although the wording of the paragraphs involved in the *Hirsch* case is quite different from the wording of the paragraphs here under discussion, we are of the opinion that the reasoning in that decision is pertinent here, i.e., that "when the steel strips were plated with nickel they became something more than steel strips." Since we believe this analysis of the situation to be correct, the merchandise at bar is not properly classifiable under paragraph 316(a) and paragraph 315.

Appellant contends that "in the absence of proof that the merchandise is not in chief value of steel the collector correctly classified it as all steel in strips, polished." This contention is untenable since we find from the record that the merchandise is not steel in strips but is a product consisting of steel and nickel, the atoms of each metal interdiffused with the atoms of the other, at least at the point of contact of the two metals. These factors make it an entirely different product.

Although appellant relies primarily on the *Steer* case we do not believe that the reasoning in that case will bear close scrutiny. The opinion reads in part:

Of course, it is true that Congress did except from the general provision for wire that class which has been galvanized or otherwise treated as above mentioned by imposing thereon an additional specific duty. But is it not likewise a legal conclusion that, if the exception had not been made, such treated wires would have been included in the words of general classification? As stated by Mr. Justice Brewer in *Arnold* v. *United States*, 147 U.S. 494, 499:

"In *Brown* v. *Maryland* (12 Wheat. 419, 438), Chief Justice Marshall recognized as 'a rule of interpretation, to which all assent, that the exception of a particular thing from general words proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause had the exception not been made.'"

Applying that rule to the provision in question, it follows that galvanized wire would have been classifiable under the general provision for wire if Congress

had not excepted it for additional duty. It made no such discrimination in the case of galvanized strips of steel. Indeed, paragraph 316 aptly illustrates that where an exception is intended the legislative purpose is made clearly manifest, as in the two instances where wire composed of gold, silver, or platinum is excluded from the provision for wires composed of iron, steel, or other metal. It demonstrates an exercise of an abundance of caution on the part of the lawmakers to remove any doubt in the premises.

The *Arnold* case involved the question of whether the generic phrase "clothing, ready made and wearing apparel of every description" would encompass a species "knit goods" in a provision which previously had excepted "knit goods" specifically but was later amended by deleting the exception.

In the first place we do not have in either the *Steer* case or the case at bar a factual situation comparable to that of the *Arnold* case where the exception was deleted. Without the exception first being present and then deleted that "rule of interpretation" does not apply. Secondly, the reasoning of that "rule of interpretation" is not applicable to the facts in the *Steer* case and, likewise, not applicable to the facts in the case at bar. Paragraph 316 of the Act of 1922 provides:

* * * *all wire* composed of * * * steel, * * * not specially provided for * * *; all flat wires and all steel in strips * * *, 25 per centum ad valorem: *Provided,* That *all wire of* * * * steel, * * * coated * * *, shall pay a duty * * *. [Emphasis added.]

"Coated wire" is excepted from all wire, the latter being the all-inclusive generic term similar to "wearing apparel of every description" in the *Arnold* case. However, "steel in strips" is an entirely different product from wire and therefore is not a species of the generic term "all wire" as is "coated wire." Therefore, under that "rule of interpretation" even though *galvanized wire* might have been classifiable under the general provisions for *all wire* if Congress had first excepted it for additional duty and then deleted the exception, it does not follow that *galvanized strips of steel* of the *Steer* case would be classified in the general provision for *strips of steel* since no exception was ever made of galvanized strips of steel.

Under the circumstances we believe that the merchandise is properly classified in paragraph 397 of the Tariff Act of 1930, as modified, since that provision includes articles composed wholly or in chief value of all the metal contained in the importation. Therefore, the question of which one is of chief value is not significant.

In view of the foregoing, we *affirm* the decision of the Customs Court.

RICH, J., concurs in result only.