SANDERS, Justice.
 

 The Bill of Information in this case charged that the defendant, Norman Sidney Wiener, had sold five pairs of men’s shoes and slippers on Sunday in violation of LSA-R.S. 51:194, which prohibits the sale of wearing apparel on the first day of the week. The defendant filed a motion to quash the Information on the ground that shoes are not wearing apparel within the terms of the Sunday Closing Law. Alternatively, he pleaded that the statute was unconstitutional on the ground of vagueness under Article I, Sections 2, 9 and 10 of the Louisiana Constitution, LSA, and the 6th and 14th Amendments of the United States Constitution. He also maintained that the statute denied him the equal protection of the laws in violation of the 14th Amendment.
 

 The trial court held the statute unconstitutional and sustained the Motion to Quash. The State has appealed.
 

 LSA-R.S. 51:194 provides:
 

 “A. On the first day of the week, commonly designated as Sunday, it
 
 *894
 
 shall be unlawful for any person, whether at retail, wholesale or by auction, to sell, attempt to sell, offer to sell or engage in the business of selling, or require any employee to sell any clothing or wearing apparel; lumber or building supply materials; furniture; home or business or office furnishings, or any household, office or business appliances.
 

 “B. Whoever violates any provision of this Section shall be fined not more than one hundred dollars for the first offense. If it is shown upon the trial of a case involving a violation of this Section that the defendant once before has been convicted of this same offense, he shall, upon a second conviction and upon each subsequent conviction, be imprisoned for not more than six months or be fined not more than five hundred dollars, or both.
 

 “C. The purpose of this Section being to promote the health, recreation and welfare of the people of this state and to prevent unfair competition among persons, firms or business establishments, the operation of any business, whether by an individual, partnership or corporation, in contravention of the provisions of this Section is declared to be a nuisance, and any person may apply to any court of competent jurisdiction for and may obtain an injunction restraining such violation.
 

 “D. A sale of an item falling within the categories enumerated in Subsection A of this Section by persons not engaged in the business of selling such an item shall be exempt from the operation of this Section.
 

 “E. This Section does not apply to any sale or sales:
 

 "(1) for charitable purposes; or
 

 “(2) of items for funeral or burial purposes ; of items sold as a part of or in conjunction with the sale of real property, or of drugs, medicines, medical or surgical supplies and appliances.”
 

 Initially, the defendant contends that shoes are not wearing apparel within the terms of the statute. Hence, he submits that the sale of shoes on Sunday is not prohibited since they fall within no other classification in the law. To sustain this contention, he relies upon the legislative history of the statute,
 
 [1]
 
 particularly the deletion of the term,
 
 footwear,
 
 from the statute during the legislative process. While the trial judge was inclined to the view that shoes were wearing apparel, he pretermitted this question.
 

 We find no merit in the initial contention. Shoes are footwear. Being footwear, they are properly classified as wear
 
 *896
 
 ing apparel for the feet.
 
 [2]
 
 Because the statutory language clearly includes shoes, the contention based on legislative history must fail.
 

 More difficult is the attack upon the constitutionality of the statute on the ground of indefiniteness. The defendant urges that the term,
 
 wearing apparel,
 
 is too broad and indefinite to establish a proper standard of criminality. Moreover, he asserts that Subsection C introduces into the term an additional factor of indefiniteness, for it has the effect of exempting articles that are related to health, recreation, and welfare. A seller, he reasons, cannot know with certainty which items are so related.
 

 The trial court sustained these contentions and struck down the statute. The court was of the opinion that honest and sincere men could differ as to whether many items worn by people were wearing apparel. It cited as examples cosmetics, flowers, buttons, and handkerchiefs. It also concluded that the legislature had, in effect, exempted all items that promoted health, recreation, and welfare, thus adding another major factor of uncertainty.
 

 We do not agree with this holding.
 

 It is, of course, fundamental that a criminal statute violates the constitutional requirement of definiteness when it fails to give a person of ordinary intelligence fair notice that his conduct is criminal.
 
 [3]
 

 This does not mean, however, that generic terms are banned from criminal statutes, or that cumbersome enumeration is ordained in all instances. Reason sustains the proposition that the use of a class-word does not invalidate a statute when that term has a commonly understood application. The enumeration in a statute of every item or variation in conduct is frequently impossible.
 
 [4]
 

 The assailed statute, among other things, prohibits the sale of “any clothing or wearing apparel” on Sunday. As used here,
 
 apparel
 
 is a generic term, or class-word. In the statutory context,
 
 wearing apparel
 
 is not in apposition to the word,
 
 clothing.
 
 Rather, it is used in an inclusive sense. The word-combination embraces all articles that are designed to be worn as dress, or covering, for the human body.
 
 *898
 
 The term is found frequently in statutory language.
 
 [5]
 
 As a term of common usage, its application is clear to persons of ordinary intelligence, especially those engaged in the business of selling such merchandise.
 
 [6]
 

 Appropriate here is the language of the United States Supreme Court in Maillard, et al v. Lawrence, 16 How. (57 U.S.) 250, [251], 14 L.Ed. 925, holding that a shawl was wearing apparel:
 

 “Perhaps within the compass of the English language, and certainly within the popular comprehension of the inhabitants of this country, there can scarcely be found terms the import of which is better understood than is that of the words “shawl” and “wearing apparel,” or of “shawl” as a familiar, every day and indispensable part of wearing apparel.”
 

 To establish that the term,
 
 wearing apparel,
 
 is amorphous, the defendant suggests that the test of wearing apparel is whether an item is in fact worn. Since ultimate use is decisive under this test, he argues that a seller does not know at the time of the sale whether an item is wearing apparel. Cited as an example is a blanket, which can be used as a cloak to protect a football fan from the stadium-cold; or' as a bed coverlet. The fallacy in this argument, we believe, is that wearing apparel includes only those articles normally worn, or designed to be worn, as dress. Other articles are clearly outside the scope of this term.
 

 The defendant also points to the difficulty in classification of several borderline items to demonstrate the vagueness of
 
 wearing apparel.
 
 That there must be a meaning boundary for any generic term cannot be questioned. Some items will necessarily fall close to that boundary— either on the inside or outside. But such a normal consequence of language'use does not vitiate the statute.
 
 [7]
 

 In reference to such exceptional cases, the United States Supreme Court stated in United States v. Petrillo:
 
 [8]
 

 “That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. Robinson v. United States, 324 U.S. 282, 285, 286, 65 S.Ct. 666, 668, 669, 89 L.Ed. 944.
 
 *900
 
 * * * The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to he punished; hut the Constitution does not require impossible standards. The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.”
 

 Finally, the defendant advances the contention that Subsection C of the statute introduces a major factor of uncertainty into the term,
 
 wearing apparel,
 
 for it exempts all items related to health, recreation, and welfare. This exemption, he states, opens a wide, nebulous area in which no person can be safe from law violation. As we have seen, the district 'court sustained this position.
 

 The Subsection provides:
 

 “The purpose of this Section being to promote the health, recreation and welfare of the people of this state and to prevent unfair competition among persons, firms or business establishments, the operation of any business, whether by an individual, partnership or corporation, in contravention of the provisions of this Section is declared to be a nuisance, • and any person may apply to any court of competent jurisdiction for and may obtain an injunction restr'airiihg such violation.”
 

 As we view it, the Subsection does two things: It states the legislative purpose of the statute and provides for a remedy by injunction. The legislature, so it declares, enacted the law to promote the health, recreation, and welfare of the people by making the first day of the week a day of rest and to prevent unfair competition by those who might choose to work while others rested. Further, it authorizes any person to apply for an injunction restraining a violation of the law.
 

 We find nothing in this Subsection, expressly or impliedly, exempting any item from the prohibition of the statute. Nor do we know of any constitutional principle which compels the exemption of all items related to health, recreation, and welfare from a Sunday closing law. Hence, the contention based on this portion of the statute has no foundation.
 

 We conclude that the term,
 
 wearing apparel,
 
 as used in the statute, has a commonly known and well understood application. It follows that the statute conforms to the constitutional standard.
 

 While the defendant has charged that the statute denies him the equal protection of the laws in violation of the 14th Amendment, he has not briefed this point separately in this Court. However, we find no merit in the charge. Sunday closing laws have been upheld against similar attacks. The legislature has a wide
 
 *902
 
 discretion in classifying commodities and businesses for purposes of the law. The constitutional safeguard is violated only if the classification rests on grounds wholly irrelevant to the achievement of the state’s objective. The present statute does not offend the Equal Protection Clause.
 
 [9]
 

 For the reasons assigned, the judgment of the Criminal District Court for the Parish of Orleans is reversed, the Motion to Quash is overruled, and the case is remanded for further proceedings according to law.
 

 [1]
 

 . Act No. 273 of 1962.
 

 [2]
 

 . See Webster’s Third New International Dictionary (1961) Verbo “footwear”; Ricks & Co. v. Assessors, 43 La.Ann. 1075, 10 So. 202; Commonwealth v. Levy, 197 Pa.Super. 297, 178 A.2d 858.
 

 [3]
 

 . Art. I, Sect. 10, Louisiana Constitution; State v. Robertson, 241 La. 249, 128 So.2d 646; State v. Penniman, 224 La. 95, 68 So.2d 770; State v. Vallery, 212 La. 1095, 34 So.2d 329; State v. Truby, 211 La. 178, 29 So.2d 758.
 

 [4]
 

 . See State v. Robertson, 241 La. 249, 128 So.2d 646; State v. Evans, 214 La. 472, 38 So.2d 140; State v. Varnado, 208 La. 319, 23 So.2d 106; 9 La.Law Review 247-248; 10 La.Law Review 198-202; and 22 Tulane Law Review 653-656.
 

 [5]
 

 . See Arnold v. United States, 147 U.S. 494, 495, 13 S.Ct. 406, 407, 37 L.Ed. 253, 254.
 

 [6]
 

 . See Arnold v. United States, 147 U.S. 494, 13 S.Ct. 406, 37 L.Ed. 253 and Maillard, et al. v. Lawrence, 16 How. (57 U.S.) 250 [251], 14 L.Ed. 925.
 

 [7]
 

 . United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402; 14 Am.Jur., Criminal Law, § 19, p. 775.
 

 [8]
 

 . 332 U.S. 1, 7-8, 67. S.Ct. 1538, 1542, 91 L.Ed. 1877, 1883.
 

 [9]
 

 . See State v. Trahan, 214 La. 100, 36 So.2d 652; Two Guys v. McKinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 and McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393.