27312. DAVIS *v.* ZABAN STORAGE COMPANY.

DECIDED FEBRUARY 21, 1939.

*Burress & Dillard,* for plaintiff.

*Clarence H. Calhoun, J. Herbert Johnson,* for defendant.

SUTTON, J. Mrs. W. F. Davis brought suit against Zaban Storage Company Inc. for damages sustained by her through the alleged negligence of the defendant in respect to certain household goods which she had stored in the defendant's warehouse, some of which were damaged and the rest destroyed by fire. The defendant answered, denying liability, and further set up a plea of accord and satisfaction by reason of a release executed by the plaintiff on March 7, 1938, subsequent to the fire, and reading as follows: "This hereby releases the Zaban Storage for any claim whatsoever in connection with damage to goods in lot No. 6699 stored in the premises at 12 & 14 Spring St., S. W., said damage occurring at and during a fire at said premises on December 15, 1937. Consideration for this release being the relinquishing of custody to the undersigned of no charges being made for storage from November 22 and the delivery out. It is understood that the relinquishing of these charges is purely a matter of good will and not as a matter of responsibility." The plaintiff, by amendment, alleged that the

release was obtained by the fraud of the defendant in falsely representing to her that all of her household goods had been put in good order or replaced. The issues made by the pleadings will appear more in detail in the discussion of the evidence, at the conclusion of which the court directed a verdict in favor of the defendant. The sole contention of the plaintiff in error is that the court erred in so doing.

The evidence showed substantially the following facts: The plaintiff stored her household goods in the warehouse of the defendant on October 22, 1937, receiving therefor a receipt which also contained an acknowledgment by her in writing that, "I further acknowledge that I have been put on notice that said storage company carries no fire insurance whatever on my property stored with it, and I expressly agree that I will procure such insurance in my own name, and if I fail to do so, that the property is stored entirely at my risk, and the said company shall not be liable for any injury thereto or loss thereof by fire." Storage charges were paid to November 22, 1937. On the night of December 15, 1937, after the warehouse had been closed, a fire of undetermined origin in the defendant's warehouse destroyed part of the plaintiff's goods and badly damaged the rest. The plaintiff appeared at the office of the defendant the following day for the purpose of inspecting her goods, but was requested to call back the next day inasmuch as on the first occasion the contents of the warehouse were in much confusion. The plaintiff testified that she did call, as requested, and saw and examined part of her goods, and was informed by Mr. Harry Zaban, president of the defendant corporation, that while he did not feel that the defendant was liable for the loss sustained by her it would, because of the high personal regard he entertained for her and particularly for her son, with whom he played golf and was on very friendly terms, repair such articles as could be repaired and would replace the others. The son testified substantially as did the plaintiff in this respect, except that he stated that Zaban informed her that the replacements would be made from time to time from articles left with the defendant for storage by others and which, because of nonpayment of storage charges, the defendant was accustomed to sell or give away. In that respect Zaban testified: "I explained to her that it was not our responsibility under our warehouse receipt, but I would do everything I could to

get the goods cleaned up, and from time to time we had goods left on our hands, at which time she could come up and select some pieces to replace the pieces that were destroyed by fire. She has never come up to get any of those pieces, and has never made any request on me that they be delivered." The plaintiff testified that she informed Zaban that she was going to Charlotte, North Carolina, for a visit of some weeks, and Zaban then stated that her absence would give the defendant an opportunity to make the necessary repairs, and that replacements would be completed by the time she returned. Several months afterwards the plaintiff returned to Atlanta and called on the defendant, and, according to her testimony, was assured by Zaban that the goods had been properly repaired or replaced. It appears that she then offered to pay the storage charges due up to that time but, at the suggestion of Zaban, he waived the storage and delivery charges, which the indisputed evidence showed to be $32, in consideration of a release being signed by the plaintiff as to any claim on account of the damage to her household goods by fire. This release was thereupon signed by the plaintiff and is set forth in the preceding portion of this opinion.

The plaintiff contends that she is not bound by this release inasmuch as it was signed by her under a fraudulent misrepresentation by the defendant that her goods had been properly repaired and replaced, and that after they had been delivered to her she discovered that they were practically worthless; that while she would be bound by the release unless upon discovery of the fraud she returned, or in a reasonable time offered to return, whatever of value she had received and rescind the agreement, in the present case she received nothing and the defendant gave up nothing, because the goods having been damaged or destroyed by fire through the defendant's negligence, and not having been repaired or replaced, she was not due the defendant any sum for storage or delivery charges, and that the jury should have passed on the question of the negligence of the defendant under the pleadings and the evidence.

No discussion is necessary to demonstrate that the release signed by the plaintiff represented an accord and satisfaction of a disputed claim. It is the general rule that where one party receives something of value from another under an accord and satisfaction he can not avoid the settlement on the ground of fraud without restoring or offering to restore the fruits of the accord and satisfac-

tion. *Interstate Life & Accident Ins. Co.* v. *Shedrick*, 57 *Ga. App.* 382 (195 S. E. 456), and cit. This rule is based on the equitable principle that the one who has parted with something of value under the circumstances should be restored to his original position before the complaining party can assert any action on the original wrong. The plaintiff in the present case might have sought to have the release set aside in an equity court. She might have rescinded, restoring or offering to restore the defendant's original status, and insisting that the release be surrendered to her. She did nothing except to bring the present suit in a court of law, and, while recognizing the principles of law here set forth, contends that she received nothing from the defendant and, therefore, nothing could be returned. In this she is mistaken. It is undisputed that she owed the defendant $32 for storage and delivery charges if the defendant was not negligent. The plaintiff avers, however, that the goods having been burned through the negligence of the defendant, as she contends, in respects unnecessary to be here set forth, she owed the defendant nothing from the date of the fire. It is apparent that the goods, although damaged, remained in storage with the acquiescence of the plaintiff, and it is nowhere shown in the record that the fire was due to any negligence of the defendant, but, on the contrary, the evidence exculpates it. Of course, at the time the goods were stored the warehouseman was bound to exercise ordinary diligence in respect to their safety, and a failure to deliver the goods on demand would make it incumbent on him to show that such diligence had been exercised as to all goods damaged or destroyed by fire. Code, § 12-405.

We think that the defendant carried the burden thus imposed. It was shown that the building in which the goods were stored was of concrete and reinforced steel construction, a fire-proof building, so called, equipped with an automatic alarm system and fire extinguishers on each floor, a bell being supposed to ring on the outside of the building when the heat inside the building reached a certain degree; that the number of the fire extinguishers was that prescribed by the Southeastern Underwriters Association; that the electric wiring was sunk inside the concrete and that there was no furnace in the building, that no smoking was permitted therein and signs were erected as notice to that effect; that litter was not allowed to accumulate in the building but was carried out every

afternoon at closing time; that the aisles were all cleared and that everything brought into the building was stacked before it was closed; that in the afternoon of the night preceding the fire the building was properly closed and locked and no person left inside, and that during the night a fire of undetermined origin occurred in the building. An inspector in the engineering department of the Southeastern Underwriters Association testified as to the building having been maintained in a satisfactory manner as to insurance risk; that he inspected the building after the fire and that the cause was not ascertainable, but that the fire could have resulted from oily waste rags or other inflammable material in some package stored in the building producing spontaneous ignition. He further testified that such a fire, could have been caused from defective wiring, as well as smoking in the building, but there was no evidence of such defect or irregularity. We think the evidence showed that the defendant had exercised the required diligence, and that there was no evidence indicating negligence on its part. Damaged goods, no less than articles in good condition, take up space in a warehouse and are subject to storage charges, where they remain stored under the order or acquiescence of the owner, under circumstances where the warehouseman has not been guilty of negligence as a bailee in protecting the goods against damage or destruction by fire. The evidence demanding a finding that the defendant was in no wise negligent, it was, consequently, entitled to storage charges and delivery charges in the amount of $32. Whether or not any fraud was practiced on the plaintiff, and whether or not the release might have been set aside in a court of equity, the fact remains that, as to the claim asserted by the plaintiff, an accord and satisfaction, evidenced by the release, was entered into between the parties. Thereby the defendant relinquished not only its warehouseman's lien but its claim for $32, and to that extent the plaintiff benefited. It would have been possible for the plaintiff to have restored the defendant to its original status by returning the goods, with an agreement that the lien was to continue as before, or by paying the amount of the storage and delivery charges. After this, she might have instituted suit for damages in a proper proceeding. The release being supported by a valuable consideration and not having been set aside, and it not appearing that the plain-

tiff restored or offered to restore the defendant to its original status, the court properly directed a verdict in favor of the defendant.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*