**BLAIR v. UNITED STATES et al.**

No. 11826.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1947.

Rehearing Denied Dec. 3, 1947.

Fred S. Ball, Jr., of Montgomery, Ala., for appellant.

Thos. M. Stowers, Asst. U. S. Atty., of Montgomery, Ala., for appellees.

Before McCORD, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

The appellant, a citizen and resident of Montgomery, Alabama, entered into a contract with the Public Housing Authority of the United States for the removal of a number of prefabricated Government-owned houses from Grenada, Mississippi, to Key West, Florida. Under the contract they were to be taken apart, moved, reconstructed, and made ready for occupancy on a site at Key West, Florida. After the buildings had been removed and reassembled at Key West and about 97.1% reconstructed, a hurricane struck Key West and damaged the houses. The Contracting Officer of the housing project verbally instructed appellant to do what was necessary, stating that responsibility for expenses could be settled at a later date. Confirming this conversation by letter, he wrote that appellant would have to bear the expense of the repairs. Appellant repaired the damage at a cost to him of $10,643, and appealed his claim for refund to the Head Officer of the Housing Authority. The Head Officer affirmed the

Contracting Officer's instructions but denied Government liability. Thereupon this suit was brought under the Tucker Act, 28 U.S.C.A. § 41(20), in the United States District Court for the Middle District of Alabama to recover $10,000 for work done and materials furnished in repairing the storm damage.

The answer set up two defenses: (1) that under the terms of the contract the Housing Authority was not responsible; and (2) that the contractor upon being paid the contract price had executed a form of general release of all claims to the Housing Authority. The Court below found that hurricane repairs were not contemplated by the parties at the time the contract was executed, and that the specifications were not intended to make the contractor an insurer of the property to any greater degree than for loss, breakage, or damage caused by negligence on the part of the contractor; but the court denied recovery to the contractor on the ground that the repairs were extra work and the contractor's failure to obtain written authorization for such extra work in accordance with the contract requirement prevented a recovery of the sum expended. The court was also of the opinion that, under the provision of the contract dealing with disputes, the decision of the Head Officer was final, binding alike on both parties.

■ The two points on which the court below based its opinion are, we think, without merit. The provisions of the contract to which the court below refers are not applicable: The provision for "extras"[1] deals with alterations and additions to the plans and specifications requiring extra work and materials. It has no application to replacements and repairs such as were made by the appellant in order to conform to the plans and specifications. The provision that the decision of the head of the department in the case of disputes is final has to do with disputes concerning questions of fact,[2] and no question of fact is in dispute. The differences have reference to the legal question, Upon whom did the loss fall?

Appellant argues that the contract is one of bailment and that a bailee for hire is only responsible for ordinary diligence and liable for ordinary negligence in the care of the property bailed. Appellee argues that the contract is more in the nature of a building contract and that, where the structures have been damaged without fault of either party while in process of erection and before they have been accepted, the contractor remains bound at his expense to erect and complete his project and to deliver it in accordance with the terms of the contract.

■ Under the contract the prefabricated houses were delivered to the appellant by the appellee to be disassembled, moved, and reassembled as houses, in similar or slightly altered form. The houses were delivered to the appellant at Grenada, Mississippi, and the same houses in reassembled form were by the appellant to be delivered back to the Housing Authority at Key West, Florida. We think, therefore, that the contract, as contended by appellant, is one of bailment. Bailment is generally defined as the delivery of personal property under agreement that the same property be restored to the person delivering it in the same or altered form. People v. Robinson, 352 Ill. 596, 186 N.E. 484; People v. Moses, 375 Ill. 336, 31 N.E.2d 585; Slaughter v. Green, 1 Rand., Va., 3, 10 Am.Dec. 488; Powder Co. v. Burkhardt, 97 U.S. 110, 24 L.Ed. 973. The contract before us and its terms and conditions meet all the requirements of a bailment. It does not follow, however, that thereunder the bailee, the contractor, was only responsible

---

[1] "Article 5. Extras.—Except as otherwise herein provided, no charge for any extra work or material will be allowed unless the same has been ordered in writing by the Contracting Officer and the price stated in such order."

[2] "Article 15. Disputes.—Except as otherwise specifically provided in this Contract, all disputes concerning questions of fact arising under this Contract shall be decided by the Contracting Officer subject to written appeal by the Contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the Contractor shall diligently proceed with the work as directed."

for ordinary diligence or liable only for ordinary negligence in the care of the property bailed. The contract is one of bailment for mutual benefit. Under the ordinary bailment, appellant would not be responsible for the damage done by the hurricane, but he could by special provision in the contract enlarge his responsibility to the extent of securing the appellee against that or any other loss. Sturm v. Boker, 150 U.S. 312, 330, 14 S.Ct. 99, 37 L.Ed. 1093; Mulvaney v. King Paint Mfg. Co., 2 Cir., 256 F. 612; 8 C.J.S., Bailments, § 26. The question here is, Did the parties intend the contract to be given that effect?

■ With regard to the contractor's responsibility, the contract provides:

Division DTH-1.

"Section 3, Contractor's Responsibility. The Contractor shall be responsible for all buildings, equipment and appurtenances to be moved and re-erected, including any loss, breakage, or other damage thereto from date of Notice to Proceed until completion and acceptance of the project."

It is to be observed that the words used are, "including any loss, breakage, or other damage." Division DTH-1 is a general, all-embracing clause, the only limitation of it being found in article 9(b),[3] which exempts the contractor from liability for losses caused by war, revolution, and like events. Those losses, from liability for which the contractor is exempted, do not include losses from acts of God. To read into the exceptions acts of God would be to add to the language used by the parties. It is important to note that paragraph (a)[4] of that same article 9, dealing with the damages for which the contractor will be liable

[3] "Article 9. (b) The Contractor shall not be liable under this Contract for loss which is caused directly or indirectly by bombardment, invasion, civil war, insurrection, rebellion, revolution, military or usurped power or by operations of armed forces while engaged in hostilities (whether war be declared or not), or by civil commotion arising from any of the foregoing. In the event damage is occasioned by any of the foregoing causes, the Contractor shall, if so ordered by the Contracting Officer, repair such damage under a Change Order stipulating the additional sum to be added to the contract price and the additional time for performance."

[4] "Article 9. (a) Delays—Damages.—If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the Contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the Contractor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the Contractor to proceed, the Contractor shall continue the work, in which event it will be impossible to determine the actual damages for the delay and in lieu thereof the Contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the Contractor and his sureties shall be liable for the amount thereof; Provided, That the right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor, *including, but not restricted to acts of God*, or of the public enemy, acts of the Government, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, if the Contractor shall within ten days from the beginning of any such delay (unless the Contracting Officer, with the approval of the head of the department or his duly authorized representative, shall grant a further period of time prior to the date of final settlement of the Contract) notify the Contracting Officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing

in the event of delay in completing the work, does mention acts of God and specifically excepts from those delays for which the contractor will be liable, delays caused by acts of God. The fact that the parties in article 9, paragraph (b), excepted certain specific property losses from those for which the appellant would be responsible indicates that they realized that the words of Division DTH-1 were broad enough to cover every kind of loss, and that in order to limit the contractor's liability it would be necessary to make specific exceptions.[5] Otherwise, the insertion of the listed exceptions would be meaningless.

The conclusion is inescapable that since paragraph (a), which deals with liability for delay, mentions acts of God, and paragraph (b), which deals with responsibility for losses, does not, the parties did not intend losses caused by acts of God to be borne by the Government.

For the reasons herein assigned, the judgment appealed from is affirmed.

---

the work when in his judgment the findings of fact justify such an extension, * * *." (Emphasis supplied.)

[5] In Arnold v. United States, 147 U.S. 494, 13 S.Ct. 406, 408, 37 L.Ed. 253, the Supreme Court said that it is "a rule of interpretation, to which all assent, that the exception of a particular thing from general words proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause had the exception not been made."