**JOHN J. HARTE CO. v. UNITED STATES.**
**No. 47359.**

United States Court of Claims.
July 10, 1950.

Edward Gallagher, Washington, D. C., for plaintiff.

Frank J. Keating, Washington, D. C., General H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and HOW-ELL, MADDEN, WHITAKER and LIT-TLETON, Judges.

HOWELL, Judge.

This is a claim to recover certain fees alleged due the plaintiff as an architect-engineer, upon work done for the defendant, and to recover damages for breach of the contract because of alleged interference with plaintiff's performance.

On May 29, 1942, the plaintiff accepted a "letter contract" offered by the District Engineer of the United States Engineer office at Memphis, Tennessee, and thereafter the parties signed a written cost-plus-fixed-fee architect-engineer contract dated May 27, 1942, in connection with the construction of an Operational Training Medium Bombardment Station in the vicinity of Halls and Dyersburg, Tennessee, the estimated cost of which was $2,466,750. The contract was in three parts. Title I covered the design work, Title II the supervision of construction, and Title III contained the administrative provisions of the contract. For the design work the plaintiff

agreed to a fee of $10,650, and to a fee of $7,100 for the supervision work.

The design work under Title I was to be completed within four weeks from the date of the contract, i. e., by June 27, 1942. Title II, being supervision, would continue until the construction work was finished. The design work under the first title was immediately undertaken and was satisfactorily completed on the prescribed date, including certain changes and corrections suggested by defendant.

Shortly after completion of the design work under Title I, it was decided in Washington that the type of installation would be changed from "Operational Training Medium Bombardment Station" to a "First Concentration Command Installation," a much larger type of project. Whereas the original project was estimated at $2,446,750, the new project was to cost $3,201,200, plus the amount of the original contract, or a total of $5,647,950.

The decision to make the change was apparently made upon receipt on June 27, 1942, of the design and plans under the original contract and because the Corps of Engineers was unable to get approval of the project from the Air Corps. However, no directive effectuating the change was received by the Memphis office of the U. S. Engineer until August 21, 1942, a period of about two months. During the interim, plaintiff's plant was idle except for some routine supervision of construction.

On August 21, 1942, Mr. Harte, sole owner of plaintiff company, was called from the project to the Memphis office where the new directive was studied and discussed for two days. He was then instructed to return and perform the necessary design work, which he did. Unknown to Mr. Harte and on the same day he returned to the project to perform the design work, the District Engineer at Memphis dispatched representatives to the offices of the Air Force, the using service, in Cincinnati, Ohio, for the purpose of getting approval of a relatively rough lay-out plan upon which work had been proceeding in the Memphis office. This lay-out plan and alleged design was approved in Cincinnati,

and without more ado, the Memphis office proceeded to let contracts on the basis of the same, inadequate as it was and described with more particularity in Finding 5.

The plaintiff went ahead with preparation of the design work, as instructed to do, until September 14, 1942, when Mr. Harte was again called to Memphis. At this time the plaintiff had finished the design for the project and was preparing estimates upon which contracts could be let. Due to the almost complete change in the nature of the project under the new directive, the previous work performed by plaintiff was of very little value in performing the new work. Moreover, the new designs prepared by the plaintiff were not used either, as the Memphis U. S. Engineer's office had already proceeded to let contracts on the basis of its own inadequate drawings.

■ Upon arrival at Memphis, Mr. Harte went to the office of Colonel G. W. Miller, Executive Assistant to the District Engineer. After waiting in the outer office for two days Mr. Harte was allowed to see the Colonel who met him with severely critical language and threatened to throw him off the job. Mr. Harte was then handed a contract purporting to cover the fixed fee for the new work and was told by the Colonel, "You can take it or leave it. That is it." He took it voluntarily, as we have found, but was doubtless motivated in so doing by the prospect of loss of work, impairment of credit, and the unnecessarily overbearing conduct of the Colonel. We do not find that this amounted to duress upon the plaintiff. Riverside & Dan River Cotton Mills, Inc., a Corporation v. United States, 11 F.Supp. 134, 81 Ct.Cl. 610, 618; Williston on Contracts, Rev.1937, Sec. 1603. Counsel have urged upon us additional authorities in their briefs, all to the same effect.

As might have been expected in view of the inadequacy of the design work performed by the Memphis office, upon which the various construction contracts were let, serious difficulties arose in the execution of the plans and the performance of the work. It became necessary for the plaintiff to redesign much of the work that the Memphis office had undertaken to do. This and other circumstances caused an investigation to be made of the situation on authority of the Office of the Chief of Engineers in Washington. The results of the investigation reflected no credit on the operation of the Memphis office and its cooperation with the plaintiff. The project was thereupon taken out of the Memphis office and transferred to the U. S. District Engineer's office at Atlanta, Georgia.

The plaintiff seeks recovery on three grounds, as follows:

(1) The plaintiff feels that the basis on which its fee was computed under the Supplemental Contract No. I was in error, in that the fee was computed on an "additional-work" basis, whereas it should have been computed on the higher "new-work" basis. The plaintiff further feels that the fee is inadequate because deductions from a normal fee (even on the additional-work basis) were taken for work which the plaintiff attempted to perform, but did not actually perform, as it was necessary for the plaintiff to redesign most of the work for which the deductions were taken. The plaintiff also feels the fee inadequate because deductions were taken for relative simplicity and for work not to be performed 100% by the plaintiff, whereas in actual operation the work was not relatively simple but, on the contrary, due to undue interference, was complex; also, due to necessary redesigning by the plaintiff, it turned out that there was little, if any, design work that was not performed fully by the plaintiff.

(2) The plaintiff contends that due to unwarranted interference by representatives of the defendant, with the design work in the first instance, and later with the supervision of the letting of contracts and the construction work itself, the plaintiff was put to great extra cost and expense beyond what would ordinarily be encountered under contracts of this sort. For this interference and breach of contract plaintiff contends he should be compensated, not only in computation of the fixed fee, but, also, independent of such computation.

(3) The plaintiff, at the request of the defendant, did some design work in connec-

tion with the construction of a housing adjunct to the project and for which a fee is claimed, the same not having been paid because the defendant was not requested in writing to do the work whereas Title III, Article III-J of the contract provided that requirements by the contracting officer for additional work must be written.

■ In answer to the arguments above, on which the plaintiff bases its action here, and with respect to which many of the facts are in plaintiff's favor, the defendant raises many searching legal questions. As we see it, there is no necessity to go into any of these questions except one because the tragedy of the plaintiff's situation is that it has failed to exhaust its administrative remedy before coming to this Court. Under date of February 14, 1945, the contracting officer made findings of fact in which he determined that he was without authority to decide the matter of duress raised by the plaintiff in connection with the signing of a change order and the Supplemental Contract No. 1 and in findings on the other matters disallowed the plaintiff's claims.

The plaintiff appealed from the contracting officer's decision by a letter dated March 17, 1945, addressed to the Secretary of War and sworn to by plaintiff on March 20, 1945.

On July 6, 1945, the War Department Board of Contract Appeals and the President of the Board, on July 7, 1945, as the authorized representative of the Secretary of War, dismissed the plaintiff's appeal because it had not been taken within the 30-day period prescribed by the contract.

Article III-I of the contract reads in its parts pertinent here, as follows: "1. * * * *All disputes* arising under this contract shall be decided by the Contracting Officer, whose decision shall be in writing subject to written appeal by the Architect-Engineer within thirty (30) days to the Secretary of War or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. * * *" (Italics supplied.)

Supplemental Contract No. 1 provided, in part: "* * * the parties do hereby mutually agree that the said principal contract above described shall be and the same is hereby modified in the following particulars, but in no others: * * *".

The supplemental contract did not modify Article III-I of the principal contract as quoted above and which defined the rights of the parties as to adjustment of all disputes arising under the contract. We find nothing to indicate that the defendant has waived this proviso or that it did anything to cause the delay. The Appeal Board, as before indicated, did not go into the merits of the claim but decided it on the strict jurisdictional ground. The plaintiff contends that the questions presented by the issues in this case are pure questions of law which the head of the department had neither the authority nor the jurisdiction to decide. It is immaterial whether the questions involved are those of fact or law. The contract provides that "all disputes" arising under its terms shall be decided by the contracting officer subject to timely appeal to the Secretary of War, or his authorized representative. The plaintiff cannot escape the failure to appeal as prescribed by the contract. The law on this situation is well settled. In United States v. Joseph A. Holpuch Co., 328 U.S. 234, 239, 66 S.Ct. 1000, 1003, 90 L.Ed. 1192, Article 15 of the contract was similar in its essential respects to Article III-I of the case at bar. In that case the Supreme Court said: "But Article 15 is something more than a dead letter to be revived only at the convenience or discretion of the contractor. It is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. Article 15 is controlling as to all disputes 'concerning questions arising under this contract' unless otherwise specified in the contract. It creates a mechanism whereby adjustments may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735, 64 S.Ct. 820, 823, 88 L.Ed. 1039. This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated

as to matters arising under the contract. United States v. Blair, supra, 321 U.S. 735, 64 S.Ct. 823, 88 L.Ed. 1039; United States v. Callahan Walker Co., 317 U.S. 56, 61, 63 S.Ct. 113, 115, 87 L.Ed. 49. And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.

"It follows that when a contractor chooses without due cause to ignore the provisions of Article 15 he destroys his right to sue for damages in the Court of Claims. That court is then obliged to outlaw his claims, whatever may be their equity. To do otherwise is to rewrite the contract."

The plaintiff's petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.