Carl M. HALVORSON, H. Halvorson, and First National Bank of Portland, Oregon, a corporation, Executor of the Estate of Howard Halvorson (Originally, Carl M. Halvorson, H. Halvorson and Howard Halvorson, joint venturers and co-adventurers, doing business as Carl M. Halvorson, H. Halvorson, and Howard Halvorson), Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 1078.

United States District Court, E. D. Washington, N. D.

Dec. 21, 1954.

Frank L. Walters, Seattle, Wash., for plaintiffs.

William B. Bantz, U. S. Atty., William M. Tugman, Asst. U. S. Atty., Spokane, Wash., for defendant.

DRIVER, District Judge.

Carl M. Halvorson, H. Halvorson and Howard Halvorson, as joint venturers, brought this action under the Tucker Act [1] to recover the reasonable value of materials and services furnished in the performance of a building construction contract. Howard Halvorson is now deceased, and his executor has been substituted as a party in his place, but for convenience the three Halvorsons will be referred to throughout this opinion as the plaintiffs.

---

[1]. Title 28, U.S.C.A. § 1346 (Title 28, U.S.C. Sec. 41(20)–1940 Ed.) (Derived from Act of March 3, 1887, Ch. 359, 24 Stat. 505, as modified by subsequently enacted statutes.)

The contract between the United States and plaintiffs was for the construction of certain buildings near Havre, Montana, at a place where the elevation above sea level is about 3,200 feet. The work was done under the supervision of the Corps of Engineers, through its District Office, in Seattle. The plans and specifications, prepared by the Engineers, called for narrow, ventilation slots under the eaves of the buildings.

Before the buildings were constructed, plaintiffs' job superintendent and one of their foremen told the job inspector for the Corps of Engineers, Mr. Jack Jackson, that the ventilation slots were not suitable for the Montana climate and that snow might blow through them into the attics and that some provision should be made for covers, or some arrangement for closing them in inclement weather. These warnings were disregarded. After damage to the buildings, as hereinafter related, provision was made by a change-order for the covering of the slots.

The buildings were constructed and completed, except for some additional, interior finishing, when a snowstorm or blizzard occurred in the Havre area. It began about the 19th of March, 1951, and lasted for three days. It was so severe that Mr. Jackson and plaintiffs' workmen, who lived in Havre, could not get out to the building area which was about 35 miles distant. When the storm was over, it was discovered that fine snow had blown into the attics of some of the buildings through the ventilation slots and stood in the attics above the ceilings and insulation to a depth of from one to four feet. Plaintiffs' superintendent immediately notified Mr. Jackson that unless the snow was removed immediately and before a thaw, great damage would result to the plastered ceilings and walls. Jackson, with the approval of his immediate superior, orally authorized the plaintiffs to proceed at once to remove the snow and to make necessary repairs and instructed them to keep accurate, detailed account of the costs.

Plaintiffs proceeded with due diligence to remove the snow, using all of their men on the job and all of the men they could employ in Havre; but a thaw came before the snow was entirely removed, and the cost of removal of the snow and of replacing and repairing damaged plastered walls and ceilings amounted to $4,662.00, including 15% profit. The undisputed testimony at the trial was that, if plaintiffs had not proceeded immediately to get the snow out of the attics, the damage would have been about four times as great.

After the work had been done, a claim was submitted and the Corps of Engineers declined to approve it. Notice of rejection of the claim was given to plaintiffs in the form of a letter dated July 20, 1951, and signed, "Sidney Shelley, Lt. Col., Corps of Engineers, Resident Engineer." The letter in part reads:

"Please be advised that a review of your claim has been made by the Legal Division of the District Office and it has been determined that no payment can be made for repairs due to snow damage.

"Your attention is invited to Article 11 of the contract; a portion of which states, 'and shall be responsible for all materials delivered and work performed until completion and final acceptance, except for any completed unit thereof which may theretofore have been finally accepted'. The Legal Division is of the opinion that 'the contractor is obligated to perform the needed repairs and protective measures at his own expense, *provided* that buildings had *not been* accepted by the Government prior to damage.' "

Plaintiffs did not take any administrative appeal from Lt. Col. Shelley or the Legal Division of the District Office on denial of their claim.

■ The damage to the buildings caused by the blizzard was due to the faulty and erroneous design of the defendant's engineers in specifying ventilation slots without provision for adequate shutters or protective coverings. As above indicated, defendant's representatives had actual notice that the

vents were unsuitable and, in the absence of such notice in the exercise of ordinary care, they should have known they were defective. The buildings were to be constructed in Montana at a place where the elevation was 3,200 feet, and where winter and early spring snowstorms, in which fine, powdery snow was driven by the wind, were of common occurrence. The plaintiffs were not insurers of the work against damage from any and all causes prior to acceptance by the government. Article 11 of the contract, to which reference was made in the letter rejecting plaintiffs' claim, provided that the contractor should be responsible for all damages to persons or property that occurred as a result of his fault or negligence in connection with the prosecution of the work, and should be responsible for all material delivered and work performed until completion and acceptance by the United States. The article did not mean that the plaintiffs were in effect insurers and answerable for damage caused by fault or negligence of the government.

■ Performance by the plaintiffs as contemplated in the contract under the plans and specifications, was rendered impossible by the fault and negligence of the defendant, and the contractors were thereafter persuaded and induced by representatives of the government to complete the work under the changed conditions.

Whether such an arrangement be called an implied-in-fact contract, quasi-contract, or be designated by some other name it gave the contractors the right to recover the reasonable value of the additional labor and materials required, plus an allowance for reasonable overhead and profit.[2]

■ Whether or not the Resident Inspector, Mr. Jackson, and his superior, the Resident Engineer, had authority to bind the government by express contract, or to modify the written contract by oral agreement, they did, in the emergency situation created by the damage done by the blizzard, have authority to direct the contractors to proceed at once to minimize the damage by immediate remedial action. Such action did not constitute the furnishing of contract extras, but rather the repair of damage resulting from the negligence of the other party to the contract. Even if the work and materials supplied should be regarded as extras, however, the government had waived its right to strict performance of the terms of the contract requiring orders for extras to be in writing, by accepting and approving extras furnished on oral directions of Inspector Jackson.[3] (Prior to the snow damage incident, it had been the custom for changes and extras to be authorized on the job by Inspector Jackson. The work would then be done and, subsequently, a written change-order out of the Seattle office of the Corps of Engineers would be forwarded to the plaintiffs.)

■ Defendant contends that plaintiffs were precluded from recovery in this court because of their failure to comply with the disputes provisions of the contract. Those provisions are set forth in Article 6, and are to the effect that all disputes concerning *questions of fact* which might arise under the contract, or disputes which might arise under the plans and specifications attached thereto, should be decided by the Contracting Officer, whose decision was to become final unless appeal therefrom was taken by the contractor in writing to the Chief of Engineers within thirty days after receiving notice of the decision. The defendant's contention is untenable for several reasons. The contract was signed for the United States by "John P. Buehler, Lt. Col., Corps of Engineers Contracting Officer." The related documents attached to the contract were signed in the same way. The contract provides in Article 28, sub-paragraph (b) that "Except for the original signing of this contract and except as otherwise

---

2. See Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5.

3. Continental Casualty Co. v. Schaefer, cited in footnote 2.

stated herein, the term 'Contracting Officer' as used herein shall include his duly appointed successor or his authorized representative." There is no evidence in the record that Lt. Col. Sidney Shelley, who signed the rejection letter, was the successor or authorized representative of Lt. Col. Buehler. In the letter he was designated as "Resident Engineer." In his deposition, taken on written interrogatories, he stated that during the construction of the work he was "Resident Engineer for the Seattle Engineer District, with station at Spokane, Washington." But, even if he should be regarded as the Contracting Officer, the letter plainly states that the claim was not considered and rejected by him, but by the "Legal Division of the District Office." Moreover, the dispute on which the plaintiffs' claim was based, was not a dispute of fact or a dispute which involved the plans and specifications, but purely and simply a dispute on questions of law. The rejection letter mentions no factual dispute or issue but, on the contrary, denies plaintiffs' demand on a point of law; namely, that, as construed by the Legal Division of the District Office, plaintiffs were in effect insurers of the work until final acceptance by the United States.

At the trial, the basic facts on which plaintiffs' claim was based were not controverted. It appeared without dispute that the plans and specifications as prepared by the Corps of Engineers provided for the ventilation vents; that the vents were unsuitable for the Montana climate at an elevation of 3,200 feet; that a seasonal snowstorm during the month of March caused damage to the structures; that it was necessary to proceed at once to repair the damage; that it was repaired under the direction of a representative of the United States;

and that the reasonable value of the repairs was the sum of $4662.

■ In the situation presented here, cases involving disputes clauses of government contracts, containing provisions that *all* disputes must be decided administratively, are not applicable.[4] Where the disputes clause provides that disputes concerning questions of fact shall be decided by certain officers or agents of the government, and only questions of law are involved, the contractor need not first exhaust his administrative remedies under the contract before instituting his court action.[5]

■ Judgment will be for the plaintiffs in the amount of $4662, and since the claim was a liquidated one, they will be allowed interest on that amount at the rate of 6% per annum from May 21, 1951.

4. United States v. Blair, 321 U.S. 730, 736, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192; United States v. Moorman, 338 U.S. 457, 462, 70 S.Ct. 288, 94 L.Ed. 256; Wildermuth v. United States, 7 Cir., 195 F.2d 18, 21, 22; John J. Harte Co. v. United States, D.C., 91 F.Supp. 753, 756, 757, 117 Ct.Cl. 309.

5. Blair v. United States, 5 Cir., 164 F.2d 115, 116. See also, United States v Lundstrom, 9 Cir., 139 F.2d 792.