**UNITED STATES of America,
Plaintiff,**

v.

**FARMERS SEED AND FEED COMPANY, a Corporation, and The St. Paul Mercury Indemnity Company, a Corporation, Defendants.**

Civ. A. No. 440.

United States District Court
M. D. Georgia,
Americus Division.

Dec. 22, 1959.

Truett Smith, Asst. U. S. Atty., Macon, Ga., for plaintiff.

J. C. McDonald, Fitzgerald, Ga., for defendants.

BOOTLE, District Judge.

Plaintiff brings this action against Farmers Seed and Feed Company, a warehouseman, and The St. Paul Mercury Indemnity Company, surety on the warehouseman's performance bond, seeking in Counts 1–4 to recover damages for breach of Uniform Grain Storage Agreements entered into between Farmers Seed and Feed Company and Commodity Credit Corporation on April 29, 1953 and June 1, 1954. Count 5 alleges that defendant warehouseman knowingly submitted a false claim for warehouse storage charges and as a result thereof received payment in excess of what was actually due, and seeks to recover double the amount of the excess payment as damages and $2,000 as forfeiture. Count 6 seeks damages for the breach of three contracts whereby defendant warehouseman purchased oats from Commodity which it then resold for seed purposes although, it is alleged, defendant warehouseman had agreed to sell the oats "for feed purposes only." Defendants filed their answer denying the material allegations of plaintiff's complaint and interposing a counterclaim seeking to recover for storage, receiving, and loading-out charges allegedly due defendant warehouseman by Commodity. All parties waived the right to trial by jury, and the evidence was presented to the court sitting without a jury. After the evidence was heard both sides were given the opportunity to submit briefs and proposed findings of fact and conclusions of law, which they did, and the case was taken under advisement by the court.

After carefully studying the briefs submitted by the parties and the evidence adduced at the trial, I find the following:

### Count 1

On April 29, 1953 defendant warehouseman entered into a Uniform Grain Storage Agreement with Commodity Credit Corporation, which contract provided the terms upon which grain owned by Commodity would be stored and handled by defendant warehouseman. Defendant warehouseman, as principal, and

defendant Indemnity Company, as surety, executed a warehouseman's bond for the performance of the said agreement, on May 18, 1953. Defendant warehouseman, pursuant to the said agreement, received 1953 crop oats for the account of Commodity for which it issued warehouse receipts.

By load-out order No. DOT-5-65026, dated August 25, 1954, defendant warehouseman was directed by Commodity to load out 1,000 bushels of oats and to forward a warehouse receipt for 7 bushels of oats to Commodity. While 1,000 bushels of oats were loaded out in compliance with the order, the warehouse receipt for 7 bushels of oats was never forwarded to Commodity. Defendant warehouseman offered no explanation for its failure to comply with the load-out order. Plaintiff offered uncontradicted testimony that the highest market value of the oats, for which defendant warehouseman was directed to forward a warehouse receipt to Commodity, between August 25, 1954, the date of the load-out order, and the date of trial was $.90 per bushel.

111 Ga.Code Ann. sec. 410 provides:

" * * * In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor so accompanied, the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal."

The Court of Appeals of Georgia has said: "Proof of failure to surrender the property on demand establishes a prima facie case of conversion." Planters' Warehouse v. Sims, 1926, 35 Ga.App. 212, 132 S.E. 252, 253. See also Greenblatt v. McCurdy, 1929, 39 Ga.App. 187, 146 S.E. 350; Davis v. Zaban Storage Company, 1939, 59 Ga.App. 474, 1 S.E.2d 473; Netzow Mfg. Co. v. Southern Ry. Co., 1909, 7 Ga.App. 163, 66 S.E. 399.

Since defendant warehouseman failed to offer any justification whatever for its failure to comply with the load-out order, which constituted a demand by Commodity for the oats, I find that said defendant is guilty of conversion of the 7 bushels for which it failed to forward a warehouse receipt to Commodity. Plaintiff has elected, as it may do, 107 Ga.Code Ann. sec. 103, to recover as damages the highest market value of the oats between the date of conversion and the time of trial, which value I find to be $.90 per bushel. Therefore, I find for the plaintiff against both defendants as to Count 1 in the amount of $6.30. Since plaintiff has elected to recover the highest market value, it is not entitled to recover interest, and no interest will be allowed prior to the date of judgment. See, e. g., Tuller v. Carter, 1877, 59 Ga. 395.

### Count 2

In addition to the grain stored under the Uniform Grain Storage Agreement referred to in Count 1 which had not yet been loaded out, during 1954–55 defendant warehouseman stored and handled commingled oats for Commodity pursuant to another Uniform Grain Storage Agreement entered into on June 1, 1954, which agreement was almost identical to the one of the preceding year. By load-out order No. DOT-5-22285, dated May 2, 1955, defendant warehouseman was directed to load out 85,650.75 bushels of oats, the order calling for Birmingham grades and destination weights for the settlement basis of any deficiencies in quantity or quality. The oats loaded out pursuant to the order were weighed by representatives of the Atlantic Coast Line Railroad Company, and loaded into twenty-seven cars at Fitzgerald, Georgia, the location of defendant's warehouse, the oats being weighed as 81,881 bushels. The Coast Line representatives were not qualified to determine official grades and weights, called for by the agreements. After transit the oats were inspected at Birmingham and found to be deficient in quality. Four carloads of the oats were weighed at Birmingham, and the remaining twenty-three carloads were weighed at Memphis (their destination). Their combined weight was found by official government representatives to be 79,-

479

785.31 bushels, 2,095.69 bushels fewer than the weight arrived at by Coast Line representatives immediately before shipment of the oats. Plaintiff seeks to recover damages for conversion of the 5,865.44 bushels of oats, which, according to Birmingham and Memphis weights, were not delivered on demand. In the alternative, plaintiff seeks damages under the Uniform Grain Storage Agreements for loss of the oats.

Defendant warehouseman, as it had the burden to do, produced evidence to justify its failure to produce the oats on demand and to rebut plaintiff's prima facie showing of conversion. Defendant warehouseman established delivery of 81,881 bushels of oats to the Atlantic Coast Line Railroad for delivery to Commodity. Thus, defendant warehouseman cannot be held responsible for conversion of these 81,881 bushels delivered on demand. Even though all of the oats may never have reached Commodity, the evidence does not authorize a finding that defendant warehouseman appropriated the oats to its own use.

Defendant warehouseman offered evidence that its failure to load out the remaining 3,769.75 bushels as directed by Commodity was due to spoilage of the oats which were stored, due to no failure on the part of the warehouseman to exercise the care generally exercised by warehousemen utilizing flat storage. Plaintiff offered testimony of its investigator Willis G. Dwen tending to show that defendant warehouseman had been selling on its own account oats held for Commodity. After carefully weighing the evidence produced by both sides, I find that defendant warehouseman has rebutted plaintiff's prima facie showing of conversion, and that defendant warehouseman is not accountable for conversion of the oats.

I turn now to the agreement between the parties to determine defendant warehouseman's liability, if any, for the loss of Commodity's grain. Although a warehouseman is generally liable only for failure to exercise ordinary care, he may increase his liability by contract. Farmers Grain, etc., Ass'n v. Commodity Credit Corp., D.C.Kan.1956, 145 F.Supp. 788; Blair v. United States, 5 Cir., 1947, 164 F.2d 115; 111 Ga. Code Ann. sec. 423. Defendant warehouseman has so increased its liability by the terms of the Uniform Grain Storage Agreements. Paragraph 11(j) of the agreement provides:

"Except to the extent that such liability is limited by the provisions of sections 10 and 15 and of this section 11, the warehouseman shall be liable as an insurer and indemnify Commodity as provided in section 13 for any failure to load out or deliver grain meeting the requirements of this section."

None of the exceptions to the liability of the warehouseman as an insurer is applicable under the facts of this case. Thus, defendant warehouseman is liable to plaintiff for its failure to deliver the oats called for by the load-out order. But defendant warehouseman contends that, even if it is liable, it is only liable for those it failed to deliver to the carrier at Fitzgerald. Defendant's contention would perhaps be persuasive were it not for Paragraph 12 of the agreement, which provides in part as follows:

"Determination of Weights and Grades on Load Out—The class, grade, quality and quantity of all the grain loaded out by the warehouseman, whether stored, handled only, or direct transferred, and whether commingled or identity preserved, shall be determined on the basis of official weights and grades at the warehouse location, or if official weights or grades are not available at such point, on the basis of official weights and/or grades at destination or at the inspection point shown on the shipping order furnished by the warehouseman, which, unless otherwise agreed, shall be the customary location on the route of shipment of an inspector licensed under the U. S. Grain Standards Act."

See also Elbow Lake Co-op. Grain Co. v. Commodity Credit Corp., D.C.Minn.1956, 144 F.Supp. 54, on appeal 8 Cir., 1958, 251 F.2d 633. Defendants introduced some evidence that Commodity had agreed to accept Fitzgerald weights and grades, even though they were not official ones, but I find that Commodity only accepted Fitzgerald weights and grades for the purpose of releasing warehouse receipts to defendant warehouseman, not for the purpose of settlement.

The evidence was uncontradicted that, if defendants were liable for the failure to deliver 5,865.44 bushels of oats, the damages, under the contracts, would be $3,988.50. Therefore, I find for plaintiff against both defendants on Count 2 in the amount of $3,988.50, with interest at the rate of 6% per annum from November 30, 1955.

### Count 3

In Count 3 plaintiff is seeking damages for the deterioration in the quality of 79,785.31 bushels of oats loaded out by defendant warehouseman pursuant to load-out order No. DOT–5–22285, dated May 2, 1955. The findings of fact and conclusions of law made in Count 2 apply equally to Count 3. Defendant warehouseman offered evidence that the deterioration in the quality of the oats loaded out was not due to any negligence on its part, but since Paragraph 11(j) of the agreement makes the warehouseman an insurer, defendant warehouseman is liable irrespective of any negligence on its part. Plaintiff's proof that the oats had deteriorated in quality is uncontradicted by defendants. Plaintiff also offered uncontradicted proof that the damage resulting from the deterioration in the quality of the oats loaded out, under the terms of the agreement, amounted to $6,133.56.

It should also be noted that defendant warehouseman failed to give any notice to Commodity of any deterioration in the quality of the oats stored by it, as it had a right to do under Paragraph 10 of the agreement to guard against liability for the grain's "going out of condition."

Therefore, I find for the plaintiff against both defendants as to Count 3 in the amount of $6,133.56, with interest from June 3, 1955 at the rate of 6% per annum.

### Count 4

Plaintiff seeks to recover $143 expended by it for weight and inspection charges on various sales of oats loaded out pursuant to the load-out order discussed in Counts 2 ond 3. Plaintiff has failed to point out any provision of the agreement which entitles it to recover such charges from defendants, and the only provision which appears applicable from a study of the contract is Paragraph 12, which provides in part as follows: "Determination of Weights and Grades on Load Out—[After providing for determination of official weights and grades at inspection or destination points, the agreement specifically states] Such inspection shall be for the account of Commodity." Said Paragraph 12 specifically provides that inspection charges are to be paid for by Commodity. If the charges for weighing are separable from the charges for inspection, still no authority is shown for taxing such charges against defendants.

Therefore, since plaintiff has failed to show by a preponderance of the evidence that it is entitled to recover these charges, I find for defendants as to Count 4.

### Count 5

Defendant warehouseman submitted an invoice to Commodity dated June 30, 1954 for warehouse charges, and was paid $18,666.83 by Commodity for the services so invoiced. In this count plaintiff alleges that the invoice constituted a false claim by defendant warehouseman, and that because of such false claim Commodity paid to defendant warehouseman $806.09 in excess of the amount actually due. Plaintiff seeks to recover, under 31 U.S.C.A. § 231, double the amount of the excess payment as damages and $2,000 as forfeiture provided for in said statute.

Plaintiff introduced evidence that, on June 30, 1954, the date of the invoice,

defendant warehouseman had in storage in its warehouse 6,035.69 fewer bushels than it should have had to cover the outstanding warehouse receipts held by Commodity. Defendant warehouseman kept no physical inventory records; in fact, no physical inventories were made by the warehouseman. Investigator Dwen, who testified about the shortage, compiled his record of the inventory from a beginning figure agreed to by Mr. Miller, defendant warehouseman's manager, taken from a balance sheet showing a gross inventory of all commodities in defendant's warehouse on December 31, 1952, and from defendant warehouseman's records of purchases, sales, receipts, load outs, and other records of the transactions of the warehouse. Although Investigator Dwen's constructive inventory, which he termed a "position sheet", might not be an entirely accurate record of defendant warehouseman's actual inventory, it appeared to be the best information available, and sufficiently reliable to be acted upon here.

I find that, on June 30, 1954, defendant warehouseman had in storage 6,035.69 fewer bushels of oats than it should have had to cover the outstanding warehouse receipts held by Commodity. I further find that defendant warehouseman received payment for storage charges on 6,035.69 bushels of oats which he did not actually have in storage on June 30, 1954, the date of the invoice, in the amount of $806.09.

■■ But in order to recover double damages and forfeiture payment under 31 U.S.C.A. § 231, it was incumbent on plaintiff to prove that defendant warehouseman submitted a false claim *with knowledge of its falsity*. Plaintiff has failed to show that defendant warehouseman knew that its invoice for payment was false at the time that it was submitted. The only evidence produced to show knowledge on the part of defendant warehouseman was Investigator Dwen's testimony that Mr. Miller, defendant warehouseman's manager, admitted that, on June 30, 1954, he might have been on the "ragged edge." On the other hand, Mr.

Miller denied any knowledge of the falsity of the claim, and testified that all of the invoice except for the mathematical computations had been prepared by Commodity. Therefore, I find that defendant warehouseman had no knowledge of the falsity of its claim when it submitted its invoice for payment to Commodity.

In regard to Count 5, I find for the plaintiff $806.09, the amount of the excess payment, with interest at the rate of 6% per annum from January 18, 1955.

### Count 6

On three occasions in August, 1954, defendant warehouseman purchased oats from Commodity for resale: On August 5, 10,000 bushels; on August 17, 10,000.5 bushels; and on August 20, 40,002 bushels. The confirmation of sale of each of these purchases contained the following provision: "By signing acceptance of this contract and returning it to CCC, Buyer certifies grain will be used for feed only." The oats were all sold for seed, not feed, purposes. It was stipulated between the parties that, if plaintiff proved that defendant was contractually bound to sell the oats for feed purposes only, then the damages would be as follows: August 5 purchase, $50; August 17 purchase, $0; and August 20 purchase, $600.40.

■ Thus, the only issue that must be decided by the court is whether defendant warehouseman was contractually bound to sell the oats for feed purposes only. Plaintiff contends that, by accepting the benefits of the contracts, defendant warehouseman bound himself to comply with the conditions which were a part of the contracts. Such appears to be the law, but the condition here in question contained a condition precedent to its application; namely, that the buyer sign acceptance of the contract and return it to Commodity. The August 5 and the August 17 confirmations of sale were signed by defendant warehouseman, but the August 20 confirmation was not signed. Therefore, defendant warehouseman was bound to sell the oats purchased on

August 5 and August 17 for feed purposes only, but it was not bound to sell the oats purchased on August 20 for feed purposes only, since acceptance of the contract was not signed and the condition did not attach.

Therefore, I find for plaintiff against defendant, Farmers Seed and Feed Company, as to Count 6 in the amount of $50. No interest will be allowed on that amount because the evidence is insufficient to determine the date of the breach of contract.

### Counterclaim

Defendant warehouseman's answer interposes a counterclaim for storage, receiving and loading-out charges totaling $17,144.59. In written reply to the counterclaim plaintiff points out that Paragraph 18 of the Uniform Grain Storage Agreements makes such payments payable "upon presentation of proper invoice" and that defendant warehouseman has failed to submit such proper invoice in accordance with the contractual requirement, plaintiff taking the position that compliance with such a requirement is a condition precedent.

At the trial, Mr. Robert M. Baird, Chief of the Claims and Collections Section and also of the Claims Department of Commodity Credit Corporation in Dallas, Texas, testified that the warehouse earned overall charges in the amount of $35,811.42, and had received payment from the Government of only $18,666.83, leaving a net amount due the warehouseman, if Commodity's claims were taken care of and if the warehouseman properly invoiced the Government, of $17,144.59, which latter amount, he stated, Commodity does not deny owing when Commodity receives a proper invoice for that amount. Subsequent to the trial the warehouseman filed an amended answer, expressly waiving for the purposes of this suit all affirmative relief on its counterclaim in excess of $10,000. This amendment was allowed subject to objections, if any, and thereafter plaintiff filed written objections to said amendment—that it was not timely, that it would avail defendants nothing, that it prays for affirmative relief not to exceed $10,000, which relief cannot be granted, that the amendment raises questions of fact as well as questions of law, and that since the case has been tried the proposed amendment would work prejudice to plaintiff, as plaintiff should have an opportunity to offer evidence in connection with questions of fact.

It is my view that evidence supporting the warehouseman's claim for credit cannot be considered for the reason that the warehouseman has not complied with the requirements of 28 U.S. C.A. § 2406, by proving that its claim has been disallowed in whole or in part by the proper accounting office, which in this case would seem to be Commodity Credit Corporation, 15 U.S.C.A. § 714b (k), United States ex rel. Skinner & Eddy Corp. v. McCarl, 1927, 275 U.S. 1, 48 S.Ct. 12, 72 L.Ed. 131. It is my view also that warehouseman is not in position to assert its alleged counterclaim against plaintiff for the reason that it has not heretofore presented a proper invoice.

While under the foregoing findings of fact and conclusions of law the defendant warehouseman is indebted to the plaintiff in the amount of $10,984.45, principal, plus interest on $3,988.50 from November 30, 1955, interest on $6,-133.56 from June 3, 1955, and interest on $806.09 from January 18, 1955, at the rate of six per cent per annum, and defendant surety company is indebted to the plaintiff in the amount of $10,934.45, principal, plus interest on $3,988.50 from November 30, 1955, interest on $6,133.56 from June 3, 1955, and interest on $806.09 from January 18, 1955, at the rate of six per cent per annum, it appears by admissions of plaintiff's responsible witness that plaintiff will be indebted to the warehouseman for a larger amount, namely, $17,144.59, if and when the warehouseman presents to Commodity a proper invoice therefor. In this situation this court will be willing to entertain and consider a motion from defendants' counsel, if they desire to submit one, to the effect that judgment in

this case be withheld for a reasonable length of time so as to permit the warehouseman to bring itself into compliance with 28 U.S.C.A. § 2406 and with the contractual provision as to the presentation of proper invoice. If such motion is to be made, let it be made within ten days from date hereof.